483 So.2d 972 (1986)
Johnie Fenton PHILLIPS
v.
Burie Edgar PARKER, et ux.
No. 85-C-1382.
Supreme Court of Louisiana.
February 24, 1986.
*973 John M. Shuey, Jr., Shuey & Smith, Shreveport, for defendant-applicant.
Walter White, Shreveport, for plaintiff-respondent.
LEMMON, Justice.
This boundary action raises the question whether defendants were properly denied the status of good faith possessors of immovable property, for purposes of ten-year acquisitive prescription, simply because they obtained a title examination at the time of their purchase and the examining attorney failed to discover that the seller had already sold a portion of the property to another party. We conclude that, especially in the light of the 1982 revisions clarifying the Civil Code articles relating to acquisitive prescription, a party who obtains a title examination is not solely for that reason precluded from claiming the status of a good faith possessor in a plea of ten-year acquisitive prescription, but rather that the obtaining of a title examination and the information actually revealed by the examination are merely factors to be considered in the judicial determination of whether the presumption of good faith has been successfully rebutted.
Facts
In 1947 G.R. Weaver, plaintiff's and defendants' common ancestor in title, acquired a tract of land containing 2.55 acres. Weaver eventually built a camp on a small portion of the lakefront property. In 1955 Weaver agreed to sell two lakefront lots from the remainder of the tract to defendants and to the McCuller brothers, who were plaintiff's immediate ancestor in title. The tract was not subdivided and contained no visible boundaries.
On August 22, 1955, Weaver executed two cash deeds by which he sold one lot to defendants and one lot to the McCullers, each for the price of $750. When defendants *974 went out to the property after the sale to mark off the lot, they learned that the property description in the deed did not describe the property they had intended to purchase, but instead described the part of the tract on which Weaver's camp was located. On advice of their attorney, defendants employed a surveyor, who surveyed the property defendants had intended to purchase, and an attorney, who examined the title to that property and expressed the opinion that Weaver had a good and valid title. Weaver then transferred to defendants by cash deed on October 7, 1955 the lot defendants had intended to buy, and defendants conveyed back to Weaver the lot purchased in error in August.
Defendants immediately cleared the property and built a camp. The following year they erected a fence in accordance with the survey, and they were in peaceful possession of the fenced property until 1982.
In the meantime the McCullers had conveyed their lot to plaintiff in 1972.[1] When plaintiff desired to move a trailer onto her property in 1982, she discovered that the property described in her August, 1955 deed overlapped the property described in defendants' October, 1955 deed by thirteen feet. Her request that defendants remove the fence was apparently the first time that defendants learned that their fence was on plaintiff's property.[2]
In this ensuing boundary action, defendants filed an exception of ten-year acquisitive prescription, claiming to have possessed since 1956, in good faith and under just title, all of the property located within the fence. At trial the only disputed issue relative to defendants' plea of acquisitive prescription was their good faith. The title examiner testified that he did not recall finding the August, 1955 sale from Weaver to the McCullers. Apparently defendants relied completely on the title examiner's written opinion that Weaver had a good and valid title to the lot which they purchased in October 1955.
The trial court overruled the exception of prescription, concluding that the defendants were in "legal bad faith" because they obtained a title examination which did not reveal the defect in their title. The court further determined that plaintiff was the owner of the disputed strip and fixed the boundary accordingly.
The court of appeal affirmed. 469 So.2d 1102. The intermediate court first noted that the doctrine of legal bad faith, under which an error of law (such as an erroneous conclusion as to ownership rights) precluded a finding of good faith for purposes of acquisitive prescription, had been legislatively overruled by La.C.C. Art. 3481 (enacted by Acts 1982, No. 187), which provides that neither an error of fact nor an error of law defeats the presumption of good faith.[3] However, the court concluded that the 1982 Civil Code revisions did not affect the theory of law that a purchaser who undertakes a title search of the public records is charged with knowledge of the defects in title that a reasonable person would acquire from a search of the public records. Citing Martin v. Schwing Lumber & Shingle Co., 228 La. 175, 81 So.2d 852 (1955), the court held that because of this theory of constructive knowledge, based on the public records doctrine, the defendants were not in good faith once they had undertaken through their attorney a search of the public records which *975 should have revealed the overlap in the property descriptions.
We granted certiorari to determine, especially in the light of the 1982 revisions, the validity of a theory of law which deems a party to be a bad faith possessor simply because he obtained a title examination, even though that party acted reasonably by employing an attorney to examine the title to the property he intended to purchase and then reasonably relied on the opinion of the title examiner that the seller had a good and valid title to the property. 475 So.2d 347.
The court of appeal (perhaps in reliance on some loose language in prior cases) has misconstrued the public records doctrine and has misapplied a questionable theory of constructive knowledge as conclusive of the determination of good faith of a possessor who obtains a title examination. It is therefore appropriate to review the public records doctrine and to analyze the effect of obtaining a title examination upon the determination of good faith under the 1982 Civil Code revisions.
The Public Records Doctrine
The law of registry is stated principally in La.R.S. 9:2721 and 9:2756 (formerly La. C.C. Art. 2266) as follows:
"No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties." R.S. 9:2721
"All sales, contracts and judgments affecting immovable property, which shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording.
"The recording shall have effect from the time when the act is deposited in the proper office, and indorsed by the proper officer." R.S. 9:2756
The fundamental principle of the law of registry is that any sale, mortgage, privilege, contract or judgment affecting immovable property, which is required to be recorded, is utterly null and void as to third persons unless recorded.[4] Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul.L. Rev. 491 (1965). When the law of recordation applies, an interest in immovable property is effective against third persons only if it is recorded; if the interest is not effective against third persons, even if the third person knows of the claim. This principle is traceable to the decision in McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909), in which the court held that the plaintiff, as purchaser of immovable property by recorded act, was entitled to recognition as owner in a petitory action against the defendant who had purchased the property seven years earlier and had immediately gone into possession, but had not recorded the deed. In response to the defendant's argument that the plaintiff had knowledge of the prior unrecorded sale, the court reiterated its decision in Harang v. Plattsmier, 21 La.Ann. 426 (1869) that actual knowledge is not the equivalent of registry, which is absolutely required in order for the sale to affect third persons.
Thus, the law of registry does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. The essence of the public records doctrine is that recordation is an essential element for the effectiveness of a right, and it is important to distinguish between effectiveness of a right against third persons and knowledge of a right by third persons. An unrecorded interest is *976 not effective against anyone (except the parties). A recorded interest, however, is effective both against those third persons who have knowledge and those who do not have knowledge of the presence of the interest in the public records. From the standpoint of the operation of the public records doctrine, knowledge is an irrelevant consideration. Any theory of constructive knowledge which imputes knowledge of the contents of the public records to third persons forms no part of the public records doctrine.[5]
Another element of the public records doctrine is the protection of third persons. La.R.S. 9:2722 provides that a third person is entitled to rely on the law of registry and is protected thereby. This protection of third parties has significance only when an interest which is required to be recorded is not recorded, because a third person under such circumstances can deal with the property in reliance on the absence of the interest from the public records, even if the third person has actual knowledge of the interest. Thus, the primary concern of the public records doctrine is the protection of third persons against unrecorded interests. The public records doctrine therefore has little applicability in the present case in which the claim of plaintiff's ancestor in title was recorded.[6]
In the present case, the sale from Weaver to the McCullers included the disputed thirteen-foot strip, and recordation made the sale effective against third persons who thereafter dealt with that strip. Because of the recordation, plaintiff (as successor in title to the McCullers) had a superior title to the strip, and defendants did not obtain a valid title in their subsequent purchase from Weaver. The fact that defendants did not have actual knowledge of the recorded sale from Weaver to the McCullers did not bear one iota on the effectiveness of that sale. Moreover, as to the merits of the boundary action, defendants lost because the McCuller's recordation made the sale effective against any third persons who later dealt with that property and not because third persons (including defendants) had constructive knowledge of that recorded sale.
Title Examination and the Good Faith Possessor
The purpose of good faith acquisitive prescription is to secure the title of a person who purchases immovable property by a deed translative of title, under the reasonable and objective belief that he is acquiring a valid title to the property, and thereafter remains in peaceful possession of the property for more than ten years without any disturbance by the true owner. Acquisitive prescription plays an important social role by doing away with the insoluble problems that otherwise could arise if there was an unknown defect in the chain of title of a long-time possessor. 1 M.Planiol, Civil Law Treatise § 2645 (La.St.Law Inst. Trans.1959). The redactors of the Civil Code therefore provided that a person who purchases immovable property under the required circumstances should eventually prevail in a title dispute with the owner who allows continuous, uninterrupted, peaceable, public and unequivocal possession for more than ten years without objection.
The law of registry is not involved in any way with the theory of acquisitive prescription that a party who reasonably believed he was acquiring valid title should be deemed to have a valid title after a certain period of possession in which the owner failed to object. The law of registry simply makes the true owner's recorded title effective against the good faith possessor until the period of time has *977 elapsed by which the good faith possessor acquires a valid title by means of the required possession. The theory of constructive knowledge should also have no bearing on the determination from an objective standpoint of the good faith of a possessor of immovable property who claims acquisitive prescription. Nevertheless, inconsistent decisions prior to the 1982 revisions of the Civil Code imputed bad faith to certain possessors, irrespective of their objective good faith.
In the present case, the lower courts applied the theory of constructive knowledge to deprive defendants of the right to claim acquisitive prescription on the basis that they were not in good faith because their attorney failed to discover a prior sale by Weaver in the public records. If the constructive knowledge afforded by recordation of Weaver's sale to the McCullers would absolutely preclude a finding of good faith on the part of defendants who later purchased the same thirteen-foot strip from Weaver, then the theory of constructive notice would write ten-year acquisitive prescription completely out of the Code. Such a result is totally unacceptable. Equally unacceptable, from the standpoint of an objective determination of good faith, is the theory of constructive knowledge which precluded good faith possession only because the attorney employed by defendants examined the records and failed to find the prior sale. This result restricts good faith status to those possessors who purchased property without any attempt whatsoever to check the validity of the title, thereby penalizing a purchaser who employs a title examiner and rewarding one who doesn't. This theory places the purchaser in a dilemma, since it is imprudent in modern practice to purchase property without a title examination, but the obtaining of a title examination would forfeit any right to claim the status of a good faith possessor in the event of an ancient defect in title. The better approach, and the one we conclude is required by the clarification provided by the 1982 revisions, is that the good faith of the possessor should be determined by a consideration of all of the factors of the particular case relevant to the definition of good faith in the Civil Code, and not merely by any reference to the public records doctrine or to any theory of constructive knowledge.[7]
La.C.C. Art. 3480, effective January 1, 1983, defines the good faith requirement in ten-year acquisitive prescription as follows:
"For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses."
The Comments to Article 3480 note that the definition of good faith was contained in former Article 3451 and that the new article changes the law.[8] The Comments further note that while former Article 3451 was ambiguous and was sometimes construed as basing good faith on the subjective view of the possessor that he owned the thing possessed, the prevailing jurisprudence determined good faith in the light of objective considerations. The new article codifies the prevailing jurisprudence. The Comments also point out that the new article does not affect the public records doctrine and that any considerations involving a search of the public records should be addressed to the issue of whether the presumption of good faith in Article 3481 has been rebutted.[9]
*978 Even under the old law it was appropriate to determine good faith on the basis of objective criteria. Further, good faith is presumed under Article 3481, as it was under the old law. The legislative overruling of the doctrine of legal bad faith did change the law.[10] See Comments to Article 3481. However, the problem is this case was not the application of the overruled doctrine of legal bad faith, but the misapplication of the theory of constructive knowledge to preclude the possessor (who was clearly in good faith on the basis of objective criteria) from claiming acquisitive prescription.
Perhaps the prior cases imputed knowledge of the public records to preclude good faith by possessors who obtained title examinations in order to prevent claims of good faith by purchasers to whom title defects had been privately communicated. Actual knowledge of a title defect at the time of purchase certainly precludes good faith. However, knowledge by a purchaser of title defects can be inferred from circumstances more relevant than the mere obtaining of a title examination. For example, a purchase by quit claim deed or at an extremely low price may be suggestive (but not conclusive) of knowledge of title defects which may rebut the presumed good faith of the purchaser. The age and nature of the title defect, and other such factors bearing on the likelihood of discovery, are also relevant to the determination.[11]
The 1982 amendments, reiterating that good faith should be presumed and restricting to objective criteria the determination whether the presumption has been rebutted, have removed the questionable basis of prior decisions which imputed bad faith to certain possessors, regardless of their objective good faith, such as by imputing knowledge of the contents of the public records to those purchasers who employed title examiners or imputing errors of title examiners to their clients on the basis of agency.[12] However, there was never any logical or compelling reason to deny a purchaser the status of a good faith possessor simply because the title examiner failed to discover a title defect.[13] At worst, such a purchaser lacks objective good faith only as to the defects actually discovered in the title examination. As to defects that the purchaser's attorney failed to discover, the purchaser who relied on the seller's declaration and on the attorney's professional opinion should be in at least as good a position to claim the status of a good faith possessor, from the standpoint of objective criteria, as a purchaser who conducted no title examination.[14]
*979 Here, defendants' good faith was presumed by operation of La.C.C.Art. 3481. Neither the deed nor the evidence at trial suggested any reason for defendants to doubt that Weaver was the owner of the property. Weaver had built a camp on a portion of the property he was selling to defendants, and he represented that he owned the property that was being sold. When the August sale mistakenly described the lot on which Weaver's camp was located, defendants consulted an attorney and then followed the attorney's advice by obtaining a survey and a title examination. Defendants then reasonably relied on the professional opinion of the attorney they had employed for that purpose. Moreover, the defect was a simple overlap in a nearly contemporaneous sale (which had no survey showing the exact location relative to defendants' property) that the examiner could easily have missed. Both defendants and the examiner testified that they were unaware of the overlap, and the examiner also pointed out the bad condition of the records in that parish at the time. It would truly be a distortion of the term "good faith" to decide that defendants lacked objective good faith under these circumstances, inasmuch as a reasonable man under like circumstances certainly would have believed that the seller had a valid title.
We therefore conclude that plaintiff has failed to carry her burden of rebutting, on the basis of objective criteria, the presumed good faith on the part of defendants.
Accordingly, the judgments of the lower courts are reversed, and defendants' plea of ten-year acquisitive prescription is sustained.
MARCUS, J., concurs in the result.
NOTES
[1] After the 1972 sale, plaintiff and her husband sold the lot in 1979, but in 1980, plaintiff, then a widow, repurchased the lot. All deeds in this chain of title contained the same property description.
[2] An accurate title examination at the time of Weaver's sale to defendants would have revealed the overlap, inasmuch as Weaver had already sold the thirteen-foot strip in question to the McCullers. The title examiner apparently either failed to find the recorded sale from Weaver to the McCullers or failed to check the measurements in the McCullers' property description against the survey of the property defendants intended to purchase.
[3] The court of appeal also commented that failure to discover an erroneous property description was probably an error of fact under the old law.
[4] Some claims are not dependent upon recordation for their existence or priority, and the public records doctrine does not affect these claims. See La.R.S. 9:2724.
[5] Of course, one of the purposes of the law of registry is to provide notice to persons who examine the public records for claims such as sales and mortgages affecting the pertinent property, but notice has nothing to do with the effectiveness of the claim against third parties.
[6] Because this protection against unrecorded claims has the result of inducing the recording of claims, prudent prospective purchasers or mortgagees will check the public records to determine if there are any sales, mortgages, privileges, contracts or judgments affecting the property in which he is interested.
[7] Of course, the obtaining of a title examination and the knowledge actually obtained from the examination may be factors to be considered in the determination of good faith.
[8] Former Article 3451 provided:

"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."
[9] Article 3481 provides:

"Good faith is presumed. Neither error of fact nor error of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possesses."
[10] Some decisions based the concept of legal bad faith on former Article 1846(3), an obligations article which provided that one who buys under error of law cannot be in good faith. It is doubtful that this article was intended to apply to third persons.
[11] Here, the defect was not as easily discoverable as the outstanding one-half ownership in Martin v. Schwing Lumber & Shingle Co., 228 La. 175, 81 So.2d 852 (1955). To discover the defect, the examiner (assuming he found the sale from Weaver to the McCullers) had to calculate and lay out the measurements of the two properties sold by Weaver and probably should have required a survey of the McCullers' property.

The point is that the difficulty in discovering the defect in this case enhances the likelihood that there was a deficiency in the title examination rather than a bad faith attempt to assert acquisitive prescription.
[12] The decision in Martin v. Schwing Lumber & Shingle Co., 228 La. 175, 81 So.2d 852 (1955), seemed to assume that the corporation's attorney who examined the title discovered that the seller owned only an undivided one-half interest in the property. The principal thrust of the opinion was that the corporation was bound by the discovery on an agency basis. That agency conclusion has questionable general application when a title examiner is not a true agent or employee of the buyer.
[13] Of course, if the attorney revealed to the purchaser that the seller's title was defective, the purchaser cannot claim good faith. See Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1949).
[14] Under decisions prior to the 1982 amendments, a purchaser of immovable property was not required to examine the public records in order to qualify as a good faith possessor. This court in Land Development Co. v. Schulz, 169 La. 1, 124 So. 125, 127 (1929), stated:

"If no one could envoke successfully the prescription of ten years who could have discovered by an examination of the public records before buying the property that the seller had no title, the plea would never be available, because no one could envoke it except one having a valid title and having therefore no need for the prescription."