KING, Judge.
The issue presented by this appeal is the correctness of the trial court’s judgment declaring various plaintiffs to have acquired ownership of certain tracts of property located in Allen Parish, Louisiana.
On September 17, 1981, Thomas E. Phillips, Evan Gillard, Jr., John Evans Gillard, Rosemarie Gillard Wood, Gregory Arthur Gillard, Glen Andrew Gillard, Gail Lynn Gillard, Nettie Rainwater, Edward Istre, and Nellie Stanley (hereinafter sometimes referred to as plaintiffs) filed a possessory action against Blanche Donaldson, John David Donaldson, H.E. Donaldson, Jr., Daniel R. Donaldson (hereinafter sometimes referred to as the Donaldsons), Red-sco Land and Development Company, Inc. (hereinafter referred to as Redsco), and the unknown heirs of Todd Parker.[1] In their petition, plaintiffs requested that their rights to the possession and ownership of the following tracts of property[2] be recognized:
(1) Plaintiff, Edward Istre, as the owner of Lot Eleven of the Todd Parker Subdivision in Allen Parish, Louisiana (hereinafter referred to as Lot 11);
(2) Plaintiff, Nettie Rainwater, as the owner of Lot Fifteen of the Todd Parker Subdivision in Allen Parish, Louisiana (hereinafter referred to as Lot 15);
(3) Plaintiff, Nellie Stanley, as the owner of Lots Seventeen and Eighteen of the Todd Parker Subdivision in Allen Parish, Louisiana (hereinafter referred to as Lot 17 and Lot 18);
(4) Plaintiff, Thomas E. Phillips, as the owner of Lot Twenty of the Todd Parker Subdivision in Allen Parish, Louisiana (hereinafter referred to as Lot 20); and
(5) Plaintiff, Evan Gillard, Jr., as the owner of an undivided one-half interest in, and the usufruct over the other one-half interest of, one acre in the Southwest Corner of Lot Seven of the Todd Parker Subdivision in Allen Parish, Louisiana (hereinafter referred to as Lot 7); and plaintiffs, John Evan Gillard, Rosemarie Gillard Wood, Gregory Arthur Gil-lard, Glen Andrew Gillard and Gail Lynn Gillard, as the co-owners in indivisión of the other one-half interest in Lot 7, subject to the usufruct of Evans Gillard, Jr.
The Donaldsons filed an answer, which basically denied all allegations of plaintiffs’ petition, and which requested that plaintiffs’ demands be rejected. Redsco filed an answer and a reconventional demand against plaintiff, Nellie Stanley, claiming record ownership of Lot 18, and thereby judicially confessing Nellie Stanley’s possession of Lot 18 and converting the pos-sessory action into a petitory action as to Lot 18. Redsco alleged that its record ownership was derived from a more ancient title than Stanley’s through a common author in title. The Donaldsons thereafter *1381 filed an amended answer and a reconven-tional demand against all of the plaintiffs except Nellie Stanley, claiming ownership of Lots 7, 11, 15, 17, and 20, and thereby also judicially confessed plaintiffs’ possession of these respective lots and converting the possessory action into a petitory action as to all of these lots. As to these lots, the Donaldsons also claim record ownership by a more ancient title from a common author in title than that of the respective plaintiffs.
A trial on the merits was held on April 15, 1983. At that time, the parties advised the trial court that plaintiff, Nettie Rainwater, had agreed to pay to the Donaldsons the sum of $1,000.00 in exchange for a quit-claim deed to Lot 15, and the suit against plaintiff, Nettie Rainwater, was dismissed as to Lot 15. The Donaldsons also admitted that they never had ownership of Lot 7, but alleged that there was a problem with the description of Lot 7, as contained in plaintiffs’ petition. The trial court, after hearing the evidence, concluded that all of the plaintiffs, although having record title to the lots inferior to the record title of Redsco and the Donaldsons, nevertheless acquired their respective lots by ten year acquisitive prescription. The trial court therefore rendered judgment, which was signed on September 27,1983, in favor of plaintiffs and against the Donald-sons and Redsco, declaring: (1) Edward Is-tre to be the owner of Lot 11; (2) Nellie Stanley to be the owner of Lots 17 and 18; (3) Thomas E. Phillips to be the owner of Lot 20; and (4) Evan Gillard, Jr. to be the owner of one acre in the Southwest corner of Lot 7. Although not explained by the record, the trial judge apparently granted Redsco’s Motion for Partial New Trial for the limited purpose of allowing the parties to reargue the case. Without any evidence in the record of such arguments, the trial court rendered another judgment on June 24, 1985 which was identical to the judgment rendered on September 27, 1983. Redsco then filed another Motion for Partial New Trial for the limited purpose of argument of the case, which was denied by the trial judge.
The Donaldsons and Redsco have both appealed the judgment rendered by the trial court on June 24, 1985. Redsco alleges that since it proved that it had a more ancient title to Lot 18, from a common ancestor in title, than that of Nellie Stanley, and since Nellie Stanley was not in good faith for purposes of acquiring Lot 18 by ten year acquisitive prescription, the trial court manifestly erred in determining Nellie Stanley to be the owner of Lot 18. The Donaldsons also argue, in regard to the plaintiffs and the lots in dispute, that plaintiffs were not in good faith for purpose of acquiring title by acquisitive prescription and also contend that the trial court judgment is manifestly erroneous.
BURDEN OF PROOF APPLICABLE TO ALL LOTS
Redsco and the Donaldsons, by claiming record ownership of the lots in question, judicially confessed the plaintiffs’ possession of the respective lots, and converted the possessory action into a petitory action. LSA-C.C.P. Art. 3657. In order to obtain a judgment recognizing their ownership to the various lots after having judicially confessed plaintiffs’ possession of the lots, Redsco (as to Lot 18) and the Donaldsons (as to Lots 7,11,17, and 20) had the burden of proving that they acquired ownership of the lots from a previous owner or by acquisitive prescription. LSA-C.C.P. Art. 3653(1).
When the titles of the parties are traced to a common author, he is presumed to be the previous owner. LSA-C.C.P. Art. 3653; LSA-C.C. Art. 532. In the instant case, the Donaldsons and Redsco produced evidence which established that they and the plaintiffs had a common author in title. As will be set forth hereafter, the Donaldsons and Redsco also established that their titles to the various lots were more ancient from the common author than that of the plaintiffs. Therefore, the Donaldsons and Red-sco would be entitled to those lots of which they have record title unless the plaintiffs proved that they acquired their respective *1382 lots by acquisitive prescription. See LSA-C.C. Art. 532, Comment (b).
The requisites for acquisitive prescription of ten years are: (1) possession of ten years; (2) good faith, (3) just title, and (4) a thing susceptible of acquisition by prescription. LSA-C.C. Art. 3475; Dunbar v. Thibodeaux, 485 So.2d 667 (La.App. 3rd Cir.1986).
LOT 11
The trial court declared plaintiff, Edward Istre, to be the owner of Lot 11, a lot to which the Donaldsons claimed ownership. The Donaldsons established their chain of title to Lot 11, as well as to Lots 17,18, and 20, as deriving from Mr. Todd Parker, the common author of the Donaldsons and of Mr. Istre. In general, Holman E. Donaldson, the deceased husband and father of the various Donaldsons, acquired Lots 11, 17, 18, and 20 from Todd Parker by virtue of a sheriffs sale on March 4, 1959.[3] On March 9, 1959, Mr. Donaldson sold all of the lots to Dr. Robert M. Wilhelmi, Charles H. Unkel and Michael Unkel. However, on September 10, 1959, these three persons reconveyed all of the property to Mr. Donaldson. After reacquiring Lots 11, 17, 18, and 20, Mr. Donaldson made no further conveyances of these lots, and the property taxes assessed on these lots in Mr. Donaldson’s name were paid annually. These same lots in dispute were also assessed in the names of the Donaldsons and the various plaintiffs, creating dual tax assessments.
Plaintiff, Edward Istre, acquired title to Lot 11 from Lois S. Thompson by deed dated August 14, 1976. Mrs. Thompson had previously acquired Lot 11 by a deed from Todd Parker on January 11, 1965. It is apparent that Todd Parker sold Lot 11 to Mrs. Thompson in 1965 when he did not own Lot 11; that lot having been previously sold at sheriffs sale to Holman E. Donaldson in 1959. Since the Donald-sons have a more ancient title to Lot 11 from Todd Parker than has Mr. Istre, Mr. Istre could obtain a judgment in his favor only by proving that he acquired title to Lot 11 by acquisitive prescription.[4]
Lot 11 is a thing susceptible to acquisition by prescription, and Mr. Istre proved that he had a just title to Lot 11. Additionally, Mr. Istre’s testimony that he was unaware of any adverse claims to Lot 11 at the time of his purchase was unrebutted. However, Mr. Istre did not acquire Lot 11 until August 14, 1976. Since the Donald-sons filed their reconventional demand claiming ownership of Lot 11 on April 15, 1983, Mr. Istre cannot satisfy the requirement of possession of ten years unless he can tack on the possession of Mrs. Thompson, his predecessor in title, as authorized by LSA-C.C. Art. 3442.
Mr. Istre testified as to his acts of actual possession of Lot 11 since his purchase in 1976. Mr. Istre stated that he built a storage building on the property, and that he has annually paid the property taxes that were assessed in his name. However, neither Mr. Istre, nor any other person, testified as to whether Mrs. Thompson possessed Lot 11 prior to her sale of the lot to Mr. Istre. Without any evidence in the record as to the possession of Lot 11 by Mrs. Thompson, or by anyone possessing on her behalf, there is no way that Mr. Istre can satisfy the requirement of physical possession of Lot 11 for ten years, a requirement necessary to prove the acquisition of Lot 11 by acquisitive prescription of ten years.
Since Mr. Istre can not prove possession of Lot 11 for ten years, he obviously can not prove possession of Lot 11 for thirty years for the purpose of thirty years ac *1383 quisitive prescription. Accordingly, we conclude that the trial court erred in declaring plaintiff, Edward Istre, to be the owner of Lot 11, and in not declaring the Donald-sons to be the owner of Lot 11.
LOT 17
The trial court declared plaintiff, Nellie Stanley, to be the owner of Lot 17, a lot of which the Donaldsons claimed ownership. As already mentioned, the Donaldsons established their title to Lot 17 as derived from Todd Parker in 1959.
Although he did not own Lot 17 due to the sheriffs sale in 1959, Todd Parker sold Lot 17 to Yersie H. Green on December 13, 1966. On August 19, 1968, the following three transactions occurred: (1) Versie Green sold Lot 17, together with all improvements situated thereon, back to Todd Parker; (2) Versie Green sold “[o]ne camp and contents, situated on Lot 17” to plaintiff, Nellie Stanley; and (3) Todd Parker sold Lot 17 to Nellie Stanley. Since the Donaldsons have a more ancient title to Lot 17 from Todd Parker than has Nellie Stanley, Nellie Stanley could obtain a judgment in her favor only by proving that she acquired title to Lot 17 by acquisitive prescription.
Mrs. Stanley testified that she has been in actual physical possession of Lot 17 ever since she purchased it from Todd Parker in 1968. Further, she stated in her deposition that she cleared Lot 17 and built a five-room house on it, and that she is currently living on Lot 17. Also, Mr. Phillip I. Vin-ing, Chief Civil Deputy for the Allen Parish Sheriff, testified that Lot 17 has been assessed in Mrs. Stanley’s name since 1970, and that the taxes have been paid in her name since that time. Mrs. Stanley therefore clearly proved (1) possession of Lot 17 for ten years; (2) just title, and (3) a thing susceptible of acquisition by prescription. The Donaldsons, however, contest Mrs. Stanley’s “good faith” in acquiring Lot 17, which is the fourth requirement for ten years acquisitive prescription. See LSA-C.C. Art. 3475.
Mrs. Stanley testified in her deposition that Todd Parker told her that he could give her a warranted deed to Lot 17, and that she “didn’t have a quarrel with anybody until” the Donaldsons and Redsco made claims to the various lots. She further testified that she had a lawyer who handled her purchases from Todd Parker and Versie Green, but that it was her understanding that Mrs. Green simply owned the building and improvements on Lot 17, while Todd Parker owned the land. There is no evidence in the record that would tend to contradict Mrs. Stanley’s testimony that she knew of any problems with the title to Lot 17, or of facts that should have put Mrs. Stanley on notice of possible problems with the title to Lot 17.
The following three articles dealing with good faith, effective January 1, 1983, are contained in the Louisiana Civil Code as follows:
“For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses.” LSA-C.C. Art. 3480.
“Good faith is presumed. Neither error of fact nor error of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possesses.” LSA-C.C. Art. 3481.
“It is sufficient that possession has commenced in good faith; subsequent bad faith does not prevent the accrual of prescription of ten years.” LSA-C.C. Art. 3482.
These Civil Code articles, although becoming effective after the date that the instant suit was commenced, constitute a change in the law only insofar as they legislatively overrule the doctrine of legal bad faith. Phillips v. Parker, 483 So.2d 972 (La.1986). The good faith of the possessor, according to Parker, supra, should be determined by a consideration of all of the factors of the particular case relevant to the definition of good faith in the Civil Code, and not merely by any reference to the public records doc *1384 trine or to any theory of constructive knowledge. No longer, according to Parker, supra, is a purchaser’s good faith automatically defeated simply because the purchaser’s attorney has conducted a title examination and has failed to discover any title defects. Parker, supra, also indicates that a purchaser’s good faith is not automatically defeated even if the purchaser’s attorney knows of a title defect, but does not tell his client.
In the instant case, however, there is no evidence in the record that Mrs. Stanley’s attorney performed a title investigation as to Lot 17, or that he had any knowledge that Lot 17 and the buildings located thereon were owned by anyone other than Todd Parker and Versie Green. We conclude that the presumption that Mrs. Stanley was in good faith when she purchased Lot 17 has not been rebutted. Accordingly, we conclude that the trial court did not manifestly err in declaring Mrs. Stanley to be the owner of Lot 17.
LOT 18
The trial court also declared plaintiff, Nellie Stanley, to be the owner of Lot 18, a lot of which Redsco claimed ownership. On July 7, 1967, Redsco acquired Lot 18 from Holman E. Donaldson, who originally acquired the lot from Todd Parker through a sheriff’s sale in 1959. Although Lot 18 was later sold, for Redsco’s failure to pay taxes, at a tax sale in 1969 to Jerome Haas and Alfred R. Ryder, Redsco reacquired Lot 18 in 1973 by a quit-claim deed executed to it by Haas and Ryder.
Nellie Stanley acquired title to Lot 18 from George Willard Fisher on September 22, 1971. Although Todd Parker lost title to Lot 18 in 1959 due to the sheriff’s sale, he later sold the lot to Mr. Fisher on February 8, 1968. Since Redsco has a more ancient chain of title to Lot 18 from Todd Parker than that of Mrs. Stanley, she could only obtain a judgment in her favor by proving that she acquired title to Lot 18 by acquisitive prescription.
Mrs. Stanley testified in her deposition that her family had Lot 18 “under fence” ever since the day she bought it. She further stated that her daughter and son-in-law built a camp on the lot which later burned down, and that her daughter and son-in-law were currently living in a trailer on Lot 18. Mr. Vining also testified that Lot 18 has been assessed in Mrs. Stanley’s name since 1972, and that the property taxes have been paid in her name.
Like the argument made by the Donald-sons as to Lot 17, Redsco claims that Mrs. Stanley was not in good faith for purposes of acquisitive prescription of ten years when she purchased Lot 18. Redsco first alleges that Nellie Stanley was not in good faith in purchasing Lot 17 due to her attorney’s alleged knowledge of problems with the record title to Lot 17, and that this knowledge is necessarily imputed to Nellie Stanley in regard to her purchase of to Lot 18 since her attorney handled both purchases. This argument has no merit since, as previously mentioned, this Court has concluded that Mrs. Stanley has not been shown to have been in bad faith in purchasing Lot 17.
Redsco also alleges that Mrs. Stanley admitted in her deposition and in court that she knew of title problems before she purchased Lot 18. In her deposition, Mrs. Stanley did answer affirmatively to Red-sco’s attorney’s question addressed to her as to whether or not her attorney told her that it would take a lawsuit to clarify her title to Lot 18. However, our review of Mrs. Stanley’s entire deposition and courtroom testimony indicates that Mrs. Stanley only knew that it would cost her more money if she wanted an abstract on the lot. Although Mrs. Stanley’s deed to Lot 18 includes a disclaimer stating that her attorney did not render an oral or written title opinion on the property conveyed, this disclaimer does not imply or infer that Mrs. Stanley’s attorney performed a title investigation, or that he knew of any defect in Mr. Fisher’s title to Lot 18.
Redsco further contends that Mrs. Stanley’s knowledge of title defects is imputed from her close family relationship to vari *1385 ous persons who had actual knowledge about the seizure and sale of Todd Parker’s property. Mrs. Stanley did testify that she has several relatives who live or lived in the Todd Parker subdivision, including Todd Parker, her second cousin. Redsco relies on the case of Watkins v. Zeigler, 147 So.2d 435 (La.App. 2nd Cir.1962) in support of its contention that knowledge of title defects may be imputed through a family relationship. Redsco’s reliance upon Watkins is misplaced since that case only stands for the proposition that it may be assumed that a party has knowledge of family relationships.
We conclude that Mrs. Stanley is not charged with constructive knowledge of Todd Parker’s improper sales simply because she has relatives who live or lived near her in the Todd Parker subdivision. We also conclude that the trial court did not manifestly err in its apparent conclusion that Mrs. Stanley had the requisite good faith to acquire Lot 18 by acquisitive prescription, and in declaring Mrs. Stanley to be the owner of Lot 18.
LOT 20
The trial court declared plaintiff, Thomas E. Phillips, to be the owner of Lot 20, another lot of which the Donaldsons claimed ownership. As already mentioned, the Donaldsons established their title to Lot 20 as derived by sheriff’s sale from Todd Parker in 1959.
Although he did not own Lot 20 due to the sheriff’s sale in 1959, Todd Parker sold Lot 20 by deed to J.D. Glass and T.E. Phillips on April 2, 1968. This sale was made with a reservation of mineral rights. On June 7, 1972, J.D. Glass conveyed all of his rights, title and interest in and to Lot 20 to T.E. Phillips. This deed stated that the sale was made subject to a reservation of mineral rights to Todd Parker. Since the Donaldsons have a more ancient title to Lot 20 from Todd Parker than has Mr. Phillips, Mr. Phillips could obtain a judgment in his favor only by proving that he acquired title to Lot 20 by acquisitive prescription.
Mrs. Geraldine Benoit Phillips, wife of T.E. Phillips, testified that her husband and Mr. Glass leased Lot 20 from Todd Parker prior to their purchase of the lot in 1968. She further testified that they built a camp on the lot in 1957, and have since added on and renovated the camp. Mrs. Phillips testified that she and her husband have been renovating the camp for the last six or seven years and getting it ready for their retirement home. In general, Mrs. Phillips testified that she and Mr. Phillips have used the property every weekend that they could get away, and on vacations. Our review of the record reveals no manifest error in the trial court’s finding that Mr. Phillips has been in possession of Lot 20 for a period in excess of ten years under a deed translative of title.
Mrs. Phillips also testified that she and Mr. Phillips had heard rumors that Todd Parker had lost his property at a sheriff’s sale. However, Mrs. Phillips could not remember when they had first heard the rumors, or from whom they heard them. Mrs. Phillips further testified that they never had a title examination performed on the lot, and had never employed an attorney to check the title to the lot. Mr. Vin-ing also testified that, like all of the other lots involved in this case, Lot 20 carries a dual assessment; the lot being assessed in the name of Holman E. Donaldson, and in the name of Mr. Phillips.
It is sufficient that possession has commenced in good faith; subsequent bad faith does not prevent the accrual of prescription of ten years. LSA-C.C. Art. 3482. There is no evidence in the record which indicates that Mr. and Mrs. Phillips heard the rumors of Todd Parker’s loss of the lots at the sheriff’s sale prior to the time that they purchased Lot 20 from Mr. Glass. We therefore conclude that the trial court did not manifestly err in apparently concluding that Mr. Phillips was in good faith in purchasing Lot 20, and in declaring Mr. Phillips to be the owner of Lot 20.
LOT 7
Finally, the trial court declared plaintiff, Evan Gillard, Jr., to be the owner of one *1386 acre in the Southwest córner of Lot 7. At the trial, the Donaldsons’ attorney admitted that Holman E. Donaldson never acquired record title to Lot 7; and that the lot was not included in the sheriffs sale to Holman E. Donaldson in 1959. Redsco also made no claim to Lot 7. The Donaldsons’ attorney only submitted to the trial court that there was a problem with the description of the property in that no lot in the Todd Parker subdivision contained an acre except for one lot which is not numbered. The Donaldsons, however, presented no evidence to substantiate their claim that the description of Mr. Gillard’s property presents a cloud upon their property.
Since the Donaldsons and Redsco do not even claim ownership of Lot 7, the trial judge obviously did not err in granting judgment in favor of Mr. Evan Gillard, Jr. However, the trial court judgment does not take into consideration a judgment of possession that is in the record, as well as the plaintiffs’ request in their petition, which recognizes Mr. Gillard’s children’s ownership as naked owners, of an undivided one-fifth interest to each in an undivided one-half interest in the property, subject to Mr. Gillard’s usufruct. Therefore, the trial court judgment in favor of Evan Gillard, Jr. will be amended to include judgment in favor of John Evans Gillard, Rosemarie Gillard Wood, Gregory Arthur Gillard, Glenn Andrew Gillard and Gayle Lynn Gil-lard, recognizing their individual naked ownerships, of an undivided one-fifth interest to each in an undivided one-half interest, in the one acre in the Southwest corner of Lot 7, subject to Mr. Gillard’s usufruct.
For the foregoing reasons, the judgment of the trial court is affirmed insofar as it declares Nellie Stanley to be the owner of Lots 17 and 18, and Thomas Phillips to be the owner of Lot 20. The judgment is reversed and set aside insofar as it declares Edward Istre to be the owner of Lot 11 and judgment is rendered recognizing the Don-aldsons as owners of Lot 11. The judgment is amended to recognize the individual naked ownership of John Evans Gillard, Rosemarie Gillard Wood, Gregory Arthur Gillard, Glenn Andrew Gillard and Gayle Lynn Gillard of an undivided one-fifth interest to each of an undivided one-half interest in one acre in the Southwest corner of Lot 7, subject to Mr. Evan Gillard, Jr.’s usufruct.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART AND RENDERED.

. A Curator ad hoc was appointed to represent the unknown heirs of Todd Parker, H.E. Donaldson, Jr. and John David Donaldson.

. With a few minor exceptions, each of these five tracts of property are more specifically described as lying North and East of Barnes Creek, in Section Thirteen, Township Seven South, Range Seven West, Louisiana Meridian, Allen Parish, Louisiana.

. Holman E. Donaldson, by virtue of the sheriffs sale, actually acquired Lots 1 through 22, excluding Lot 7, of the Todd Parker property shown on a Plat of Survey prepared by Jasper L. Bourgeois, registered land surveyor, and dated May 14, 1958.

. Although Lots 11, 17, and 20 were sold at a tax sale in 1982 to Mr. Jack Karam, Jr. because the 1981 tax assessed in the name of Mr. Donaldson was not paid, the parties stipulated that they would perfect a redemption in the name of the Donaldsons as to the lots for the purpose of eliminating the necessity of getting Mr. Karam involved in the suit as a party.