# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 18-994


**JOAN BRUNSON, ET AL.**

**VERSUS**

**CROWN BRAKE, LLC, ET AL.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 260,319
HONORABLE PATRICIA EVANS KOCH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and John E. Conery, Judges.


**REVERSED AND RENDERED.**


**George Carnal Gaiennie, III**
**Gaiennie Law Firm, L.L.C.**
**201 Johnston Street – Suite 101 B**
**Alexandria, LA 71301**
**Telephone: (318) 704-5784**
**COUNSEL FOR:**
    **Defendant/Appellee – Crown Brake, LLC**


**Cliffe Edward Laborde, III**
**Mahtook & LaFleur**
**1000 Chase Tower**
**600 Jefferson Street**
**Lafayette, LA 70501**
**Telephone: (337) 266-2189**
**COUNSEL FOR:**
    **Defendant/Appellee – Crown Brake, LLC**

**Stacy Christopher Auzenne**
**Auzenne Law Firm, L.L.C.**
**P. O. Box 11817**
**Alexandria, LA 71315-1817**
**Telephone:  (318) 880-0087**
**COUNSEL FOR:**
    **Defendant/Appellant – Cory Close**

**Hansel Mark Harlan**
**Harlan Law Firm**
**9100 Bluebonnet Centre Boulevard, #102**
**Baton Rouge, LA 70809**
**Telephone:  (225) 442-1056**
**COUNSEL FOR:**
    **Plaintiffs/Appellants – Joan Brunson and Dana Brunson**

**Barbara Bell Melton**
**Faircloth Melton, LLC**
**105 Yorktown Drive**
**Alexandria, LA 71303**
**Telephone:  (318) 619-7755**
**COUNSEL FOR:**
    **Plaintiffs/Appellants – Joan Brunson and Dana Brunson**

**THIBODEAUX, Chief Judge.**

Joan and Dana Brunson (the Brunsons) sought a declaratory judgment in response to allegations asserted by Crown Brake, LLC (Crown Brake) that a fifty-foot-wide predial servitude, running through the middle of the Brunsons' property in favor of Crown Brake's property, was created in a 2008 Act of Exchange. In response, Crown Brake filed a reconventional demand seeking confirmation of the existence of the predial servitude. Shortly thereafter, the Brunsons amended their petition, joining Cory Close (Close) to the litigation as a possible party needed for just adjudication, as a landowner whose property could be affected by the alleged predial servitude. After hearing the merits, the trial court found that the Crown Brake property, as the dominant estate, did have servitudes of passage created by the 2008 Act of Exchange across both the Brunson property and the Close property.

Reviewing the record in accordance with our well-established property law and public records doctrine, we reverse the judgment of the trial court and grant judgment declaring that the 2008 Act of Exchange, as recorded, did not create a servitude of passage in favor of the Crown Brake property over either the Brunson property or the Close property.

I.

## ISSUES

The Brunsons present the following issues for review:

(1)    whether a vague and ambiguous act can create a predial servitude;

(2)    whether, when there is a conflict between a legal description and a plat in an act, the legal description or the plat controls;

(3)     whether parol evidence is admissible to resolve ambiguity and reform an act purporting to create a predial servitude; and,

(4)     whether the law can find in favor of a party who claims that a vague and ambiguous act creates a predial servitude but fails to introduce any parol evidence as to the intent of the parties.

In his appeal, Mr. Close raises the following assignments of error:

(1)     [T]he Honorable Trial Court committed legal error in considering parol evidence outside the four corners of the 2008 Act of Exchange, the 2014 **CLOSE** cash sales from Tarver and **GALLOWAY**, and the 2014 **CLOSE** Servitude of Passage.

(2)     [T]he Honorable Trial Court committed legal error when it found a 50' predial servitude and/or Servitude of Passage extending south of Taylor Oaks Boulevard through **CLOSE**'s property when said servitude was not set out in any legal specificity by dimensions, the placement of such a servitude, its length, width, or exact location, all as contrary to the Louisiana Civil Code and Louisiana Property law.

(3)     [T]he Honorable Trial Court committed legal error when it ignored and/or disregarded the intent of both **CLOSE** and **GALLOWAY** to establish a 12' predial servitude/Servitude of Passage on May 28, 2014, since no such 50' servitude existed south of Taylor Oaks Boulevard through **CLOSE**'s property extending to **GALLOWAY**'s 190 acre tract.

(4)     [S]ince no one has ever used the alleged 50' Predial Servitude across **CLOSE**'s property in ten (10) years, that servitude has prescribed.[1]

---

[1]Mr. Close filed an exception of prescription in this court, arguing that the alleged servitude across his property was extinguished by prescription of ten years non-use. Our finding that the 2008 Act of Exchange, as recorded, did not create a servitude across his property or the Brunsons' property renders his exception, along with all remaining issues and assignments of error, moot.

2

## II.

## FACTS AND PROCEDURAL HISTORY

On December 17, 2008, Ballina Farms, Inc. (Ballina)[2] and Frances

Galloway Hargis (Galloway) perfected an exchange of property whereby Ballina

transferred to Ms. Galloway all of its interest in and to 190.02 acres of land, along

with sixty thousand dollars, in exchange for all of Ms. Galloway's interest in and to

her stock in Ballina. The 190.02 acre-tract commenced at the southwest corner of

Lot 213 of Tennyson Oaks Subdivision, in Alexandria, Louisiana. Exhibit A, which

was attached to the 2008 Act of Exchange, contained a metes and bounds legal

description of the 190.02-acre tract, as well as the following pertinent language:

> IN ADDITION, right of way and utility servitudes are
> hereby extended from Audubon Oaks and Taylor Oaks to
> the hereinabove described tract as follows:
>
> The servitude from Audubon to the tract is defined as an
> extension of the right of way lines of Audubon as recorded
> in the official plat of Tennyson Oaks in Plat Books of the
> Clerk of Court of Rapides Parish Louisiana to the
> northerly line of the surveyed tract as shown on the
> attached plat.
>
> The servitude from Taylor Oaks to the tract is defined as
> an extension of the right of way lines of Taylor Oaks as
> recorded on the official plat of Tennyson Oaks in the Plat
> Book of the Clerk of Court of Rapides Parish Louisiana to
> the northerly line of the surveyed tract as shown on the
> attached plat.
>
> Said tract and servitudes are shown on plat of survey by
> Frank L. Willis, PE, PLS, dated November 18, 2008,
> attached hereto and made a part hereof.

While the 2008 Act of Exchange and its Exhibit A were recorded in the

public conveyance records of Rapides Parish, the plat attached to and recorded with

---

[2]Ballina Farms, Inc., is now known as Ballina Investments, Inc.

Exhibit A was dated December 9, 2008. The November 18, 2008 plat was not attached, nor was it recorded. Moreover, the attached and recorded December 9, 2008 plat did not contain any verbiage as to the alleged servitudes alluded to above.

By act of cash sale, dated June 5, 2011, Ballina transferred to William and Shirrea Tarver (the Tarvers) its ownership in 2.89 acres beginning at the southeast border of the Tennyson Oak Subdivision and extending south from Taylor Oaks Boulevard. The Tarvers then sold their tract to Mr. Close, by act of cash sale, on May 20, 2014. Eight days later, on May 28, 2014, Mr. Close purchased from Ms. Galloway, by act of cash sale, 5.87 acres adjacent to the 2.89-acre tract he acquired from the Tarvers. That same day, Ms. Galloway secured a twelve-foot-wide predial "Servitude of Passage" in favor of her 190.02-acre tract from Mr. Close, across the east edge of his property. With the purchase of the 2.89-acre and 5.87-acre tracts, Mr. Close owned the contiguous acreage at the southern border of Tennyson Oaks Subdivision, commencing from the end of Taylor Oaks Boulevard and extending to Ms. Galloway's 190.02 acre-tract.

On March 1, 2017, the Brunsons purchased from Ballina, by act of cash sale, a 6.1-acre tract of land, located south of Audubon Oaks Boulevard and adjacent to Mr. Close's property, along the southern border of Tennyson Oaks Subdivision. The Brunson property, like the Close property, abutted Ms. Galloway's 190.02-acre tract. On July 11, 2017, the Brunsons began construction of their home with an estimated completion date of July 1, 2018, and approximate value of $1.5 million.

Crown Brake then purchased from Ms. Galloway her 190.02 acre-tract of land, by act of cash sale, dated September 29, 2017. Thereafter, Crown Brake claimed to have a fifty-foot-wide predial servitude of passage in favor of the 190.02-acre tract, beginning at the south end of Audubon Oaks Boulevard and extending

4

directly through the middle of the Brunsons' partially constructed home. As the origin of its predial servitude, Crown Brake cited the 2008 Act of Exchange of property between Ballina and Ms. Galloway. Specifically, Crown Brake referred to the language contained in Exhibit A recited above. Along with its alleged servitude, Crown Brake also demanded that the Brunsons cease and desist construction of their home.

In response, the Brunsons filed their petition for declaratory judgment and injunctive relief, seeking a declaration that Crown Brake's alleged predial servitude across the middle of their property did not exist. Crown Brake, in conjunction with its answer, filed a reconventional demand against the Brunsons, seeking recognition that its predial servitude was valid. In their first supplemental and amending petition, the Brunsons sought to add Mr. Close as a third-party defendant, arguing that the declaration of rights regarding Crown Brake's predial servitude could not be determined without adding Mr. Close, as the owner of the property extending south of Taylor Oaks Boulevard and abutting the 190.02-acre tract.

The trial court heard testimony from various witnesses and allowed evidence to be admitted outside of and along with the 2008 Act of Exchange and the five acts of cash sale conveying the properties at issue, which were all recorded in the public conveyance records of Rapides Parish, Louisiana. The trial court ruled and submitted written reasons, finding that two separate predial servitudes or rights of passage, the first extending south from Audubon Oaks Boulevard (Brunson property) and the second extending south from Taylor Oaks Boulevard (Close property), existed in favor of Ms. Galloway and her successor-in-title, Crown Brake. The court held that it was bound to give legal effect to all written contracts according

5

to the true intent of the parties and found that the creation of the servitudes was the intent of both Ballino and Ms. Galloway in the 2008 Act of Exchange. In its subsequently signed judgment, dated June 21, 2018, the trial court also ordered "that the Injunction against Crown Brake, LLC, preventing entry onto or passage over the property owned by the Brunsons, entered by the Court on December 11, 2017, shall remain in full force and effect pending further Order by this Court[.]"

## III.

## STANDARD OF REVIEW

An appellate court reviews the factual findings of a trial court under the manifest error-clearly wrong standard of review. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The trial court's legal conclusions on questions of law, however, are reviewed de novo. *City of Bossier City v. Vernon*, 12-78 (La. 10/16/12), 100 So.3d 301.

## IV.

## LAW AND DISCUSSION

Louisiana Civil Code Article 646 defines a predial servitude as "a charge on a servient estate for the benefit of a dominant estate." As real rights burdening immovables, "[p]redial servitudes are established by all acts by which immovables may be transferred." La.Civ.Code art. 722. "The use and extent of such servitudes are regulated by the title by which they are created." La.Civ.Code art. 697.

> Owners have the right to establish on their estate, or to acquire for the benefit of their estate, such predial servitudes as they deem proper. This freedom, however, is tempered by rules of public policy enacted in the general interest. C.C. art. 11. Apart from general limitations, the

6

creation of predial servitudes by juridical act is subject to special rules that are largely insusceptible of modification by agreement. These rules, limiting contractual and testamentary freedom, are designed to effect a balance between individual demands for the recognition of modifications of property rights to suit individual needs and social demands for the preservation of a relatively simple system of unencumbered property. See Yiannopoulos, Real Rights: Limits of Contractual and Testamentary Freedom, 30 La.L.Rev. 44 (1969).

La.Civ.Code art. 697, Revision Comments—1977, comment (b) (West 2018).

"Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate." La.Civ.Code art. 730.

Note,

[i]t is a cardinal rule of interpretation that, in case of doubt, instruments purporting to establish predial servitudes are always interpreted in favor of the owner of the property to be affected. The rule incorporates into Louisiana law the civilian principle that any doubt as to the free use of immovable property must be resolved *in favorem libertatis*. See Domat, Les lois civiles dans leur ordre naturel, 1 Oeuvres de Domat 329 (ed. Remy 1828); 2 Toullier, Droit civil français 192 (1833). The Louisiana Supreme Court has repeatedly declared that "servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law." Parish v. Municipality No. 2, 8 La.Ann. 145, 147 (1853), cited with approval in Buras Ice Factory, Inc. v. Department of Highways, 235 La. 158, 103 So.2d 74 (1958). See also McGuffy v. Weil, 240 La. 758, 767, 125 So.2d 154, 158 (1960): "any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner". The rule that the proper interpretation of an ambiguous instrument is that which least restricts the ownership of the land has been applied by Louisiana courts in a variety of contexts. See, *e.g.*, Whitehall Oil Co. v. Heard, 197 So.2d 672 (La.App.3rd Cir.), writ refused 250 La. 924, 199 So.2d 923 (1967) (determination of the question whether a landowner created a single servitude over contiguous tracts or a series of multiple interests).

7

La.Civ.Code art. 730, Revision Comments—1977, comment (b) (West 2018). "In consequence of this, servitudes claimed under titles, are never sustained by implication-the title creating them must be express, as to their nature and extent, as well as to the estate which owes them, and the estate to which they are due." *Parish v. Municipality No. 2*, 8 La.Ann. 145, 147 (1853). Predial servitudes, therefore, "cannot be inferred or implied from vague or ambiguous language." *Mardis v. Brantley*, 30,773, p. 2 (La.App. 2 Cir. 8/25/98), 717 So.2d 702, 704, *writ denied*, 98-2488 (La. 11/20/98), 729 So.2d 563.

To be effective as to third parties, however, the instrument establishing "a real right in or over an immovable[,]" such as a predial servitude, must be "registered by recording it in the appropriate mortgage or conveyance records[.]" La.Civ.Code art. 3338. Significantly, "such an act or instrument is not effective as to a third person until it is recorded." La.Civ.Code art. 3340. Louisiana Civil Code Article 3343 defines a third person as "a person who is not a party to or personally bound by an instrument." Simply stated, if a predial servitude is not recorded, it is not effective against third parties pursuant to our public records doctrine, which our supreme court further expounded upon in *Cimarex Energy Company v. Mauboules*, 09-1170, 09-1180, 09-1194, pp. 18-20 (La. 4/9/10), 40 So.3d 931, 943-44:

> The Louisiana Public Records doctrine generally expresses a public policy that interest in real estate must be recorded in order to affect third persons. Simply put, an instrument in writing affecting immovable property which is not recorded is null and void except between the parties. *See* Peter S. Title, *Louisiana Real Estate Transactions*, § 8.1 (2009). The public records doctrine is founded upon our public policy and social purpose of assuring stability of land titles. *Camel v. Waller*, 526 So.2d 1086, 1089 (La.1988). . . .
>
> . . . .

The public records doctrine has been described as a negative doctrine because it does not create rights, but, rather, denies the effect of certain rights unless they are recorded. Title, *supra* at § 8.16; *Camel*, 526 So.2d at 1089-1090; *Phillips v. Parker*, 483 So.2d 972, 975 (La.1986). In explaining the negative nature of the doctrine, this Court has stated that third persons are not allowed to rely on what is contained in the public records, but can rely on the absence from the public records of those interests that are required to be recorded. *Camel*, 526 So.2d at 1090 [citing Redmann, *The Louisiana Law of Recordation: Some Principles and Some Problems*, 39 Tul. L.Rev. 491 (1965) ]. The primary focus of the public records doctrine is the protection of third persons against unrecorded interests. *Camel*, 526 So.2d at 1090; *Phillips*, 483 So.2d at 976.

Because recordation is not the source of legal rights, Orange River can not simply rely on, and only look to, the public records doctrine to support its position that the Mauboules' claim was not a competing claim for purposes of concursus. While a third party is entitled to rely on the absence from the public record of those interests that are required to be recorded, the public records doctrine does not provide that a third party may rely implicitly on what is shown in a recorded instrument, nor does it provide that a third party who relies on a recorded instrument can acquire good title from a vendor who does not have good title. Redmann, *supra* at 500 [citing *Succession of Rosinski*, 158 So.2d 467, 469 (La.App. 3 Cir.1963)]. . . . Simply put, "the rule that what is not recorded is not effective does not mean that what is recorded is effective at all events, despite forgery or any other defect." Redmann, *supra*, at 501.

Accordingly, under our well-established civilian tradition, as codified in our Civil Code, a predial servitude by title, such as the one alleged herein, can never be sustained by implication. Because a predial servitude cannot be inferred or implied from vagueness or ambiguity, the language of its title must, therefore, be express. Moreover, both the dominant and servient estates need to be reasonably identifiable therein, and such a servitude is only binding on third parties once it is properly recorded.

As third parties to the 2008 Act of Exchange, the parties herein—the Brunsons, Crown Brake, and Mr. Close—are not allowed, under our public records doctrine, to rely on what is contained in the public record. They can, however, rely on the absence of those interests that, by law, had to be recorded, such as the predial servitude at issue. Moreover, because our public records doctrine denies the effect of certain unrecorded rights, it logically follows that these third parties could only possibly, if even, be bound by what was recorded—the 2008 Act of Exchange and its attachments, namely Exhibit A and the December 9, 2008 plat survey. Our resolution of the rights at issue, therefore, is likewise constrained to these recorded documents. After examining the documents, we find that the language contained therein is not sufficient to create a predial servitude of passage in favor of the Crown Brake property across either the Brunson property or the Close property.

At the outset, we note that the language in Exhibit A of the 2008 Act of Exchange recited above is clearly ambiguous. While it is debatable as to whether the language reasonably identifies a dominant estate, i.e., "the tract," there is absolutely no identification of the servient estate. Rather, by its language, Exhibit A defers to "the attached plat" as to the specifics of both the "tract" and the servitudes. However, the attached plat survey is not the survey explicitly named in the document and, more importantly, does not contain any verbiage or notations setting forth or referring to a servitude or its location, much less to a servient or dominant estate. Moreover, the November 18, 2008 survey plat to which Exhibit A refers by name was never recorded.

Given this ambiguity, doubts necessarily arise as "to the existence, extent, or manner of exercise of [the alleged] predial servitude." La.Civ.Code art. 730. Under both codified law and our civilian tradition, we are mandated to resolve

this ambiguity "in favor of the [alleged] servient estate" and with the least restriction on the unencumbered ownership of land. *Id.* We are not called upon to delve into the intent of the contracting parties when, as in this case, the parties seeking to enforce or denounce the alleged predial servitudes are third parties to the establishing act. Therefore, we find the trial court legally erred in seeking to enforce what it determined to be the intent of the contracting parties and thereby concluding that predial servitudes in favor of the Crown Brake property burden the Brunson and the Close properties. Rather, we find that the recorded documents fail to express, on their faces, the nature, location, and extent of a charge for the benefit of the Crown Brake property on either the Brunson property or the Close property sufficient, under our law, to create predial servitudes of passage binding on third parties to the 2008 Act of Exchange.

Accordingly, we reverse the judgment of the trial court and grant judgment declaring that the 2008 Act of Exchange, as recorded, did not create predial servitudes of passage in favor of the Crown Brake property over either the Brunson property or the Close property. The injunction against Crown Brake shall remain in full force and effect.

V.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is reversed. Judgment is hereby granted in favor of Joan and Dana Brunson and Cory Close, declaring that the 2008 Act of Exchange, as recorded, did not create predial servitudes of passage over their properties for the benefit of the Crown Brake, LLC

property.  The injunction against Crown Brake, LLC shall remain in full force and effect.

Costs of this appeal are assessed to the Defendant/Appellant, Crown Brake, LLC.

**REVERSED AND RENDERED.**