LOLLEY, J.
hThe Succession of Avery Glenn Jenkins (the “appellant”) appeals a judgment by the First Judicial District Court, Parish of Caddo, State of Louisiana, which allowed the Succession of Joyce Rogers Jenkins, through its administratrix, Linda Parker, to withdraw certain funds which were being held in the registry of the court. For the following reasons, we reverse in part the judgment of the trial court and remand this proceeding to the trial court for further proceedings.
Facts
On March 8, 2003, Avery Jenkins staggered into the Shreveport Police Department covered with blood and confessed that he “may have hurt his wife,” Joyce Rogers Jenkins, in a fight. Police officers were dispatched to their house and found Joyce in a pool of blood with brain fragments splattered in the room. A chair leg was found, also covered with blood and brain fragments. Her autopsy revealed that Joyce died of “massive blunt head trauma,” as a result of being hit in the head with a “blunt object.” Avery Jenkins was arrested and charged with second degree murder.
Shortly thereafter, the Succession of Joyce Rogers Jenkins was opened, and her daughter, Linda Parker, was named ad-ministratrix. On August 4, 2004, the Succession of Joyce Rogers Jenkins filed a petition for authority to sell the matrimonial domicile located at 3021 Curtis Lane in Shreveport (the “Curtis Lane home”), which was owned by Joyce and Avery. The trial court authorized the sale and ordered that half of the proceeds of the sale (i.e., Avery’s half of the proceeds) be deposited into the registry of the court. The record indicates that sum to be $26,443.87. Subsequently, Avery filed a motion to withdraw the funds from the registry of the court, claiming his entitlement as owner of the one-half proceeds from the sale of the house. The Succession of Joyce Rogers Jenkins opposed the withdrawal and requested reimbursement for maintenance expenses and mortgage Inpayments made by the succession for the community-owned home.
Before the motions could be considered by the trial court, Avery died in prison on October 13, 2004. A hearing was ultimately held, and a judgment' was rendered denying Avery’s (now his estate’s) motion and granting the Succession of Joyce Rogers Jenkins’ request for reimbursement of certain community debts. The judgment does not specify a precise amount to be withdrawn by her Succession, presumably it was the amount requested in the motion — $13,998.55. Notably, the trial court, in the judgment, stated that the judgment might be suspended pending an appeal of same. This appeal by the Succession of Avery Glenn Jenkins ensued.
*270 Discussion
The appellant raises one assignment of error on appeal, arguing that the trial court erred in allowing the Succession of Joyce Rogers Jenkins to withdraw the funds that belong to the appellant, refusing the appellant’s same request. Additionally, as ordered by this court, the appellant also briefs the issue of whether the judgment at issue is appealable.
The sole issue in this appeal is the disbursement of funds from the registry of the court that resulted from the sale of the Curtis Lane home, which was community property. Upon the death of Joyce Jenkins, the community property regime that existed between her and Avery was terminated. See La. C.C. art. 2356. As Joyce died intestate, her children (her only heirs) succeeded to her property, which was a one-half interest in the community property. Avery then became one-half owner of his portion in the community. La. C.C. art. 2369.2 In other words, upon the termination of the community property regime, Joyce’s succession and Avery became co-owners of the former community property, and the provisions governing co-ownership applied. La. C.C. art. 2369.1. Thus, the IsCurtis Lane home became owned in indi-visión by the Succession of Joyce Rogers Jenkins and Avery Jenkins, who was incarcerated and awaiting trial for Joyce’s murder.
The Succession of Joyce Rogers Jenkins then sought authority to sell the Curtis Lane home at private sale, noting in its motion to the trial court that it already had a purchaser for the property. Based on this motion, the trial court ordered Avery (or his agent) to attend the closing and sell his one-half interest in the Curtis Lane home. Initially, we questioned the legality of the sale of the Curtis Lane home, and, in fact, we question the legal authority by which the trial court ordered Avery to sell his one-half interest in the home without properly following the procedure for a judicial partition. See La. C.C.P. art. 4602. Moreover, the trial court clearly lacked authority to order Avery, a co-owner of the property, to sell his one-half of the Curtis Lane home at a private sale. See Welch v. Zucco, 27,634 (La.App. 2d Cir.12/06/95), 665 So.2d 697, 700, unit denied, 96-0438 (La.04/08/96), 671 So.2d 336, where this court noted that “... nothing in the code articles, comments thereto, or jurisprudence contemplates a court-ordered private sale as directed by the trial court in this matter.” However, Avery, although initially opposed to the sale, eventually acquiesced in same (after the trial court ordered him to sell his one-half interest) and signed the deed.[1] Thus, although the steps leading up to the sale were procedurally suspect and unconventional, we conclude, due to Avery’s eventual acquiescence and participation in the sale, that the sale of the Curtis Lane home was ultimately valid.
Once the Curtis Lane home was sold, one-half of the proceeds obviously belonged to Avery, because they were derived from the sale of his one-half 1 ¿interest in the co-owned Curtis Lane home. The trial court ordered that sum to be deposited in the registry of the court, and again, we question the legal authority upon which the trial court based its order and its refusal to grant Avery’s succession the right to withdraw his share of the proceeds. However, a preliminary issue that must be addressed before we can consider the merits of the trial court’s judgment is whether the judgment being appealed is in fact an appealable judgment. We conclude that the trial court’s judg *271 ment was in error for the following reasons.
The portion of the judgment in favor of the Succession of Joyce Rogers Jenkins states that “IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Authority to Withdraw Amount Deposited in the Registry of the Court is GRANTED.” The motion referred to was filed by the Succession of Joyce Rogers Jenkins and said motion requested the disbursement of $13,998.55 for reimbursement for maintenance expenses and mortgage payments made by the succession to the community-owned Curtis Lane home. Louisiana jurisprudence requires that the final judgment itself be precise, definite and certain. Williams v. Enriquez, 40,305 (La.App. 2d Cir.11/17/06), 915 So.2d 434. The specific nature and amount of damages should be determinable from a judgment without reference to an extrinsic source such as pleadings or reasons for judgment. Security Nat. Partners, Limited Partnership v. Baxley, 37,747 (La.App. 2d Cir.10/29/03), 859 So.2d 890. As our supreme court held a century ago in Fontelieu v. Fontelieu, 116 La. 866, 41 So. 120, 125 (1906):
[I]f a judgment purports to be final and is given upon a money demand, the amount of the recovery must be stated in it with certainty and precision. If the amount remains to be determined by a future contingency, or ascertained by references, or diminished by the allowance of an unliquidated credit, or is otherwise indefinite and uncertain, it is no proper judgment.
| ./Thus, because the exact amount awarded to the Succession of Joyce Rogers Jenkins cannot be determined from this judgment, the judgment, as it pertains to the Succession of Joyce Rogers Jenkins, is reversed and this issue must be remanded to the trial court to proceed in accordance with this opinion.
Further, although this proceeding is a succession proceeding, we consider the facts of this case analogous to the settlement of a community property regime following a divorce — another cause by which a community property regime might be terminated. Here, the Succession of Joyce Rogers Jenkins claimed in its motion that it was entitled to reimbursement of $13,-998.55 — which it characterized as expenses for the maintenance of the family home and community debts. Although the Succession of Joyce Rogers Jenkins also filed its Second Amended Detailed Descriptive List, which lists both the community assets and debts, we are unable to determine how the amount claimed by the succession for reimbursement was actually obtained or what amount the trial court considered in making its ruling. There is no evidence in the record to support the amount awarded to the Succession of Joyce Rogers Jenkins. It is evident, however, that in addition to being indeterminate, this judgment was not final, because it does not appear that all issues relating to a final accounting of the former community property have been resolved. Analogizing this case with cases dealing with partition of community property following a termination of the community by divorce, we conclude that the trial court erroneously ordered the reimbursement from Avery’s separate property at this juncture in the proceedings. A review of the record indicates that there may have been other property in the community, most of which was evidently in the control of the administratrix, Linda Parker. Notably, one community asset was cash in excess of $50,000 in a safety deposit box. It would be advisable that both successions consider their respective inventories and | sa final determination be made as to community assets and debts for a final accounting. See Nunez v. Nunez, 552 So.2d 472 (La.App. 4th Cir.10/12/89), citing Daigre v. Daigre, 230 La. 472, 89 So.2d 41 (1956), stating that “[p]iecemeal partition *272 of property acquired during marriage and settlement of claims arising from matrimonial regimes after termination of the community has long been prohibited.”[2] It would appear to be in the best interest of all parties for the trial court to continue the suspension of its judgment pending a final settlement of the former community property between Avery and Joyce.
Conclusion
For the foregoing reasons, we reverse the judgment by the trial court as it pertains to the Succession of Joyce Rogers Jenkins and remand with instructions to the trial court and parties to proceed accordingly. Costs of this appeal are assessed equally between the parties.
REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

. Actually, the deed was signed on Avery’s behalf by Susan Jenkins, Avery's agent and attorney in fact by virtue of a power of attorney filed in the Caddo Parish conveyar records,

. This is not to say, however, that we agree with the judgment of the trial court in this matter. We note that the trial court has denied the request of Avery's succession to withdraw what were legally his proceeds; however, we can see no legal basis for denying such a request. Notably, La. C.C. art. 811 calls for the distribution to the co-owners of proceeds acquired from a partition by private sale, which is, in effect, what occurred in this instance.