997 So.2d 659 (2008)
HEIRS OF John MORRIS, Plaintiffs-Appellant
v.
Joe C. SIMPSON and Kent Hart, Defendants-Appellees.
No. 43,693-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2008.
Murphy J. White, Mansfield, for Appellant Chester Greggs, Jr.
*660 E. Ray Kethley, Patricia N. Miramon, Shreveport, for Appellees.
Before BROWN, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
This protracted litigation began in 1993 with plaintiff's petitory action against the interests of a married couple who were deceased and whose successions were unopened. The petitory action admitted that the decedents had established possession of the residential property during their lifetimes. Despite the ongoing corporeal possession of the property by one of the heirs, the initial petitory action did not include the heir as a party defendant, and a petitory judgment in favor of plaintiff and against the successions resulted. Upon learning of that judgment, the heir successfully defended against the plaintiff's later eviction proceeding by seeking the nullity of the judgment and reconvening for recognition of her family's ownership of the property. The trial court's rulings in favor of the heir and her family are appealed, and for the following reasons, we affirm.

Facts and Procedural History
This dispute, which first began in 1993, actually involves multiple, separate actions over a disputed property, all filed in the same civil suit number 53,902 of the Eleventh Judicial District Court. The heirs of John Morris filed the initial petitory action and later, a separate eviction proceeding. The heirs of Kent and Daisey Hart eventually filed a nullity action against the judgment resulting from the initial petitory action and effectively reconvened for their petitory claims for ownership of the disputed property.
The heirs of John Morris, including Chester Greggs, Jr.,[1] (hereafter sometimes referred to as "Morris/Greggs" or "Plaintiff") filed a petitory action entitled "Heirs of John Morris v. Joe C. Simpson and Kent Hart," on October 15, 1993. Morris/Greggs' claim of ownership against the Kent Hart family concerned two contiguous one-acre tracts of land in DeSoto Parish (hereinafter the "Property"). The petitory action referenced conflicting deeds to Kent Hart for these two acres, dated March 16, 1973, and July 22, 1974. These conveyances described Kent Hart's marital status as "husband of Daisey Cash Hart."
The petition alleged without further detail that Kent Hart was the "present possessor" of the Property and contained the following prayer:
WHEREFORE PETITIONERS PRAY that the two (2) one (1) acre tracts now in the possession of Kent Hart (described in paragraph (8) above P-7, and paragraph (9) above P-8) be returned to the peaceful ownership of the "John Morris Estate" and the petitioners as heirs of John Morris.
Morris/Greggs attempted service of the petition on Kent Hart at Route 1, Box 44-A, Frierson, Louisiana. The record clearly reflects that Route 1, Box 44-A and 213 Mason Road in Frierson are the municipal addresses for the Property. The Sheriff's return for service of the petition on Kent Hart dated October 20, 1993, stated, "this subject died in 1987." Two months later, *661 Plaintiff moved for the appointment of an attorney to represent the unknown heirs of Kent Hart. An attorney was appointed to represent his estate on November 22, 1993.
The court-appointed attorney quickly filed the peremptory exception of no right of action, alleging that (1) Daisey Cash Hart, as the surviving spouse in community of Kent Hart, was an indispensable party defendant, and (2) a succession representative for the Succession of Kent Hart was the proper party defendant under La. C.C.P. art. 734.
Some months later, counsel for Morris/Greggs conceded that the procedure leading to the appointment of a curator/attorney under La. C.C.P. art. 5091(2)(a) was improper, and that a succession representative should represent the estate of Kent Hart. On May 6, 1994, the attorney initially appointed as the "curator ad hoc" was relieved of his duties by order of the court.
In August, 1994, Plaintiff filed the first amended petition, alleging that Kent Hart was deceased, and that Daisey Cash Hart should be added as a party defendant as the owner of a one-half interest in the community existing between her and her deceased husband. Service was requested upon Daisey Cash Hart at Route 1, Box 44-A, Frierson, Louisiana. The same rural address shown on the citation issued with the amended petition was crossed off and "213 Mason Road" was handwritten next to it. The death certificate for Daisey Cash Hart filed later in these proceedings indicates Mrs. Hart died at home on March 17, 1993, at Route 1, Box 44A in Frierson.
Thereafter, Morris/Greggs apparently also learned of the death of Daisey Hart. On August 30, 1999, Chester Greggs, Jr., in his capacity as the succession representative of the Succession of John Morris, petitioned to appoint an attorney as the administrator of the vacant successions of Kent and Daisey Hart, claiming the status of a creditor of the Harts' successions. Richard Z. Johnson was the attorney appointed by the court as succession representative. On August 30, 1999, Plaintiff moved in the petitory action to substitute Richard Z. Johnson as the representative of the Succession of Kent and Daisey Hart.
Johnson filed his answer in this proceeding on April 2, 2002, with a general denial. There is evidence in the record indicating that Johnson had advertised in the local newspaper seeking information regarding the heirs of the Harts, to no avail. However, Johnson's actions in defense of the petitory action apparently were never directed toward examining the status of the possession of the Property.
On August 19, 2002, the matter proceeded to trial. The court's minute entry reflects the following:
TRIAL: This matter having been regularly fixed for hearing this day, Plaintiff, Chester Greggs, Jr., representative of the Succession of John Morris present represented by Murphy J. White; Defendant, Joe C. Simpson, present represented by Harvey P. DeLaune[2]; and Richard Z. Johnson, appointed succession representative of the Succession of Kent and Daisey Hart also present.
Mr. Johnson gave his Curator's report.
Mr. White gave oral statement to the Court and offered the entire record into evidence.

*662 Judgment for Plaintiff as prayed for, See Decree.
Judgments filed after Court proceedings.
The trial court judgment pertaining to the Property belonging to the Succession of Kent and Daisey Hart nullified the two deeds by which Kent and Daisey Hart acquired the property, and declared the land to be owned by Morris/Greggs. The judgment (hereinafter the "2002 Judgment") was signed August 19, 2002.
The next stage of the proceeding began on January 5, 2006, when Morris/Greggs sued to evict Christine Hart (hereinafter "Christine") from the Property. Christine is the daughter of Kent and Daisey Hart. Service was requested upon Christine at 213 Mason Road in Frierson. The day before the scheduled eviction hearing, Christine filed a reconventional pleading seeking a nullity of the 2002 Judgment, based on her status as an heir of Kent Hart and Daisey Hart, and as representative of the Succession of Kent and Daisey Hart. Christine alleged that Morris/Greggs improperly opened her parents' succession in August 1999, and that improper service of the Morris/Greggs petitory action and lack of notice of that proceeding had occurred. Christine also claimed that while they were living, her parents, and now, herself and other Hart heirs, had good faith possession of the Property with just title for ten years, or thirty year possession sufficient to establish title by acquisitive prescription. Christine prayed for a stay in the eviction proceeding pending the resolution of the nullity action and the petitory claim, which she pursued on behalf of her parents' successions. On February 22, 2006, Christine was appointed Administratrix of the Succession of Kent and Daisey Hart. She qualified as such and took the oath on March 9, 2006.
Morris/Greggs filed peremptory exceptions of no right of action and res judicata. The exceptions, eviction rule, nullity and petitory actions were consolidated for trial on October 16, 2007. At the hearing, the court received testimony from Greggs, his cousin, and Christine, and accepted certain documentary evidence, including undisputed proof of the Hart family's possession of the Property since 1975.
The trial court made the following ruling from the bench:
THE COURT: ... I'm finding that there was never an attempt to notice Ms. Christine Hart. The Court's finding there was neverit's not been proven that there was ever actual notice on Ms. Hart. Now the attempted service on those who are deceased, is not sufficient. The actions of the curator/administrator were insufficient to protect the rights of the heirs in this case. And that acquisitive prescription issue has been and will be, you know, is there. And we don't overlook that just because someone doesn't properly perform their functions as a court-appointed officer of the court. So I will not allow that to be the reason why someone would be removed from their property. Therefore, the rule to evict is hereby dismissed.
The trial court's judgment, which is the subject of this appeal, denied Greggs's exceptions of no right of action and res judicata. Further, the 2002 Judgment for the Morris/Greggs petitory action was nullified. Christine Hart, as Administratrix of the Succession of Kent Hart and Daisey Hart, was declared the owner of the Property.
Morris/Greggs contests the trial court's nullity ruling on the ground that Harts' estate and Christine Hart received sufficient notice of the petitory action. Morris/Greggs asserts that the appointment of Richard Z. Johnson as representative of *663 the Harts' vacant successions allowed for proper service and notice to the interests of the unopened successions. Regarding the trial court's judgment recognizing ownership in the successions of the Harts, Morris/Greggs argues that appellee cannot prevail on the basis of thirty years' acquisitive prescription since the 1993 petitory action was filed before the thirty years of the Harts' possession of the Property had accrued.

Discussion

I.
When Morris/Greggs instituted this petitory action in October 1993, service was requested on defendant Kent Hart, who was erroneously alleged to still be living at the address for the Property. Upon learning that Kent Hart was deceased, Morris/Greggs moved for and obtained the appointment of an attorney "curator" to represent Hart's unopened succession. Plaintiff was then met with an exception of no right of action by the court appointed attorney and the argument that Code of Civil Procedure Article 734 required that only an appointed succession representative could serve as the defendant in a suit against a succession. Significantly, in May 1994, Morris/Greggs conceded that the appointment of the attorney pursuant to Article 5091 of the Code of Civil Procedure was inappropriate and that a succession representative for the Succession of Kent Hart would be required to be named as a defendant. Eventually, after Morris/Greggs determined that the Hart claim to the Property was the community property claim of Kent and Daisey Hart and that Daisey was also deceased, Morris/Greggs petitioned the court in a separate civil action, No. 59,968, for the opening of the vacant successions of the Harts. The 2002 Judgment for Plaintiff's petitory claims against the successions of the Harts, and the eventual nullity action regarding that judgment, require that we initially review the past history in our law and jurisprudence concerning the application of Articles 734 and 5091 for the proper representation of the defendant's interests in an action with claims against the property of a deceased person whose succession has never been opened.
Article 734 of the Code of Civil Procedure has provided since its original enactment in 1960 that "the succession representative appointed by a court of this state is the proper defendant in an action to enforce an obligation of the deceased or of his succession, while the latter is under administration." That statement arguably left open the question of the proper party defendant when the succession is not opened and under administration and when the claim is against the property of a deceased person, as opposed to a claim for enforcement of a personal obligation.
In 1964, an amendment to Article 5091 appears to have addressed the issue by the addition of subparagraph (A)(2)(a), as follows:
A. The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(2) The action or proceeding is in rem and:
(a) The defendant is dead, no succession representative has been appointed, and his heirs and legatees have not been sent into possession judicially.
Article 8 of the Code of Civil Procedure discusses a Louisiana court's jurisdiction in rem, as follows:
A court which is otherwise competent under the laws of this state has jurisdiction to enforce a right in, to, or against property having a situs in this state, claimed or owned by a nonresident.
*664 The aim of this attorney appointment procedure thus appears to allow an in rem action to proceed for the resolution of the plaintiff's conflicting claim against property of a decedent. Concerning an immovable, the property remains encumbered by a recorded and conflicting right in the name of the decedent, and the plaintiff may not secure his rights in the property without a proceeding "against" the property. The heirs or legatees who might succeed to the decedent's conflicting interest have not acted to open the succession. They have not tacitly or informally accepted rights in the unopened succession by dealing in any manner with the property. Cf. La. C.C. arts. 958 and 959. They may remain at liberty to renounce any interest in the succession. Cf. La. C.C. art. 963. This causes the potential successor to be like an absentee, hence the need for an appointed attorney to represent the interests of the successor of the decedent while affording plaintiff the right to proceed regarding ownership of the property.
After 1964, Article 5091 therefore arguably allowed the plaintiff to obtain relief for his claim against the property in an in rem proceeding without the need to open the succession. Nevertheless, through the years, despite the apparent allowance for the naming of an attorney to represent an unopened succession for in rem proceedings under Article 5091, the jurisprudence continued to favor the application of Article 734, requiring the opening of the succession and the appointment of a succession representative to defend such actions. Ruston State Bank & Trust Co. v. Crystal Oil Co., 463 So.2d 860 (La.App. 2d Cir. 1985); Holland v. Unopened Succession of Holland, 562 So.2d 1022 (La.App. 3d Cir.1990), writ denied, 566 So.2d 399 (La. 1990).
In February 1991, the Louisiana Supreme Court's ruling in State, through Dep't of Transp. & Dev. v. Estate of Davis, 572 So.2d 39 (La.1990) (hereinafter the "Estate of Davis"), addressed the conflict between Articles 734 and 5091. The case involved a state expropriation instituted against an attorney appointed under Article 5091 for an unopened succession and not against a duly qualified succession representative appointed after the formal opening of the succession. Significantly, despite initial service upon the Article 5091 attorney, another attorney purportedly representing one-half of the potential heirs, and another individual claiming to be an heir, intervened in the suit. Instead of denying such intervention and requiring the admitted heirs to formally open the decedent's succession for the protection of all heirs, the state and intervenors proceeded to a settlement judgment concerning the value of the property. A large amount of money was deposited by the state into the registry of the court as a result of the settlement. Most of that money was withdrawn by the attorney representing one-half of the heirs, and as a result, all of those heirs and the other heirs of the estate eventually were denied a portion of their just compensation for the property because of the attorney's actions. After the annulment of the initial settlement judgment, the question presented to the supreme court concerned whether the state was required to double-pay the amount of the compensation for the property which was lost as a result of the attorney's actions and the alleged improper proceeding against the unopened succession.
Rejecting the state's argument that the appointment of the Article 5091 attorney was a proper proceeding binding all of the heirs of the estate, the supreme court ordered an additional payment by the state for the property. In so holding, Article 734 was upheld as the appropriate procedural provision governing such suits *665 against an unopened succession. The court held:
Thus, it was the Department's duty to determine whether or not the succession of Giles Davis had been opened and whether there was in existence a succession representative and, if not, to initiate proceedings to open the succession and have the proper succession representative appointed and subsequently named as the defendant in the expropriation suit.
Estate of Davis, 572 So.2d at 43. Footnote 10 of the opinion further explains the state's duty for the initiation of the proceedings as follows:
When the property was expropriated, the succession of Giles Davis had never been opened. The Department should have petitioned to open the succession and appointed a provisional administrator. La.Code Civ. P. art. 3111. The provisional administrator would have been required to furnish a bond (while the attorney appointed by the court in the instant case to represent the Estate was not required to do so). La.Code Civ. P. art. 3112. If the provisional administrator of the succession would have mishandled the funds, then the bond would have been available to the heirs of the succession. La.Code Civ. P. art. 3152.
In an apparent reaction to the Estate of Davis ruling, Louisiana Acts 1991, No. 366 was enacted, amending Article 5091 by adding the following sentence to section B and adding a new section D as follows:
B. For the limited purpose of any such action or proceeding, the appointed attorney at law shall be the proper representative of the succession of any such decedent to the same extent as if he were the regularly appointed and duly qualified administrator or executor in such decedent's succession.
D. The improper designation of a defendant for whom an attorney has been appointed by the court in an action or proceeding in rem under Paragraph (A)(2) of this Article shall not affect the validity of the proceedings and any judgment rendered therein shall be binding upon the parties and property involved in the action or proceeding in rem. Therefore, naming an attorney to represent the unopened succession of the defendant, the succession of the defendant, the estate of the defendant, the deceased defendant, or any other similar designation or appellation shall satisfy the requirements of Paragraph (A)(2)(a). The designation of a corporation or a partnership by a name sufficient to identify the same to a reasonably prudent man, regardless of any errors which it might contain, shall satisfy the requirements of Paragraph (A)(2)(b).
Most importantly, Section 3 of Act 366 of 1991 provides that "Code of Civil Procedure Article 734 and R.S. 48:441 through 460, inclusive, are hereby superseded to the extent that those provisions are in conflict with the provisions of this Act and all other laws or parts of laws in conflict herewith are hereby repealed." Following Act 366, the superiority of the Article 5091 attorney for suits against unopened successions, and the Act's overruling of the rationale[3] employed in Estate of Davis, *666 were recognized by this court in the expropriation suit, State, through Dep't of Transp. and Dev. v. Estate of McDade, 592 So.2d 1373 (La.App. 2d Cir.1992) (hereinafter the "Estate of McDade").
With this summary of the law regarding suits against unopened successions, we will now examine the trial court's ruling that the 2002 Judgment obtained against the successions of the Harts was a nullity. Article 2002 of the Code of Civil Procedure provides that a final judgment shall be annulled if it is rendered against a defendant who has not been served with process as required by law. Article 2004 also provides that a final judgment obtained by fraud or ill practice may be annulled. La. C.C.P. art. 2004(A). Christine's claim of nullity rests on the lack of procedural due process provided in the Plaintiff's petitory action regarding the interest of the successions and her own interests as the occupant/possessor of the Property.
The first issue concerns the service of process on the successions and the Plaintiff's confusion surrounding the proper representation of the Harts' successions in the petitory action. Plaintiff eventually caused the two successions to be opened, and the court named Richard Z. Johnson as the succession representative for the vacant successions. In taking that action, Plaintiff appears to be following the procedure set forth in footnote 10 of the Estate of Davis, supra. However, that suggested procedure was called into question by the 1991 amendment to Article 5091. Also, after Johnson's appointment, he never took the oath of office for the administration of the successions or furnished security as administrator. Overall, we view Johnson's representation of the Harts' successions in the petitory action, without the formalities of the oath of a succession representative and bond, as nothing more than representation as an Article 5091 attorney for the successions. This however can be adequate representation if the petitory claims presented by Morris/Greggs in this case amount to the so-called "in rem proceeding" addressed under Article 5091.
As set forth above, Article 5091 refers to an "in rem proceeding" which is not specifically defined in the Code of Civil Procedure. La. C.C.P. art. 8 addresses the in rem jurisdiction of Louisiana courts, and by implication, such definition indicates that the in rem proceeding contemplated in Article 5091 is one "to enforce a right in, to or against property having a situs in this state" against an ownership claim once held by a decedent, which claim is the subject of a plaintiff's action. One such action "in rem" recognized by this court in the Estate of McDade, supra, is a state expropriation action. Do the Morris/Greggs's petitory claims as presented in this case likewise amount to an in rem proceeding so as to justify the use of an Article 5091 attorney to represent the defendant successions in this case?
The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership. La. C.C.P. art. 3651. Under this definition of the petitory action, the plaintiff may face a defendant in possession of the property or a defendant that is not in possession who otherwise has an adverse claim of ownership. These two possible scenarios, dependent upon the defendant's possession or lack thereof, determine which burden of proof the plaintiff must *667 meet in the petitory action as set forth in La. C.C.P. art. 3653, as follows:
To obtain a judgment recognizing his ownership of immovable property or real right therein, the plaintiff in a petitory action shall:
(1) Prove that he has acquired ownership from a previous owner or by acquisitive prescription, if the court finds that the defendant is in possession thereof; or
(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof.
In a real action such as a petitory or possessory proceeding, the plaintiff's claim to the immovable in certain instances may be affected only by a "disturbance in law" caused by the continuing existence of a recorded instrument which asserts or implies a conflicting right of ownership or of a real right in the property. La. C.C.P. art. 3659. The party whose rights are reflected in that instrument may be deceased, presenting the plaintiff with the problem of clearing his title by eliminating from the public records the decedent's recorded claim. Because of the unknown whereabouts of the decedent's successors, the appointment of an Article 5091 attorney would clearly be in order in such a setting. In this case, a portion of the Morris/Greggs petitory claim sought such relief, and the 2002 Judgment nullified two recorded deeds to the Harts representing their conflicting recorded title to the Property.
On the other hand, in a petitory dispute where a defendant has caused a "disturbance in fact" and established possession by adverse acts of possession against the plaintiff's property for the required length of time, any real action to end that possession and establish plaintiff's ownership might never become necessary because of the death of the adverse possessor. The adverse possession or "disturbance in fact" might cease altogether after death, allowing plaintiff to reestablish possession. However, if evidence of the adverse possession continues by the acts of another person on the property after the death of the adverse possessor, a petitory action to end that disturbance is more than just an action "against the property," it is against the person who continues the disturbance of the plaintiff's right to possession. That person is essential as a party to plaintiff's petitory action aimed at ending such adverse possession. In other words, in a setting where the plaintiff is out of possession of the property, caused by a deceased party whose successors have continued in actual corporeal possession, the petitory action for recognition of plaintiff's ownership and restoration of peaceful possession must be brought against the persons remaining in corporeal possession.
Here, Morris/Greggs' initial petition sought to declare the Harts' deeds null and erase them as recorded claims against the Property. However, Morris/Greggs additionally sought to end the admitted possession of the Hart family and return the Property to the peaceful possession of Morris/Greggs. That corporeal possession, which Plaintiff admitted was established by Mr. and Mrs. Hart, occurred in a residence on the Property and continued throughout the pendency of the action. As such, this petitory action sought relief for claims against the property (in rem), for erasure of the Harts' recorded deeds and against the person or persons with adverse possession of the Property. It was therefore not an action purely in rem against the property of the decedents, and the person in actual possession of the property, Christine, was entitled to service and citation for the initial action. From another perspective, Christine had informally accepted the right of possession to the *668 Property from her deceased parents by her continued use and occupancy and her recorded acts involving the Property.[4] Morris/Greggs cannot admit those ongoing acts of corporeal possession, proceed against the decedents' successions only to obtain a judgment in recognition of the Morris/Greggs ownership claim, and then later take up the action again to evict Christine, thereby denying her the right as a successor of her parents to challenge Morris/Greggs' claim of ownership on the strength of her possession and her parents' title to the Property.[5]
In reaching this conclusion, we distinguish this case from those actions with a purely in rem objective to obtain recognition of one's ownership or, in the case of expropriation, the property itself. In those situations without any ongoing acts of corporeal possession occurring on the property by parties claiming possessory rights derived from the decedent, the plaintiff's conflicting claim of ownership against the decedent's unopened succession may be brought against the Article 5091 attorney alone. The Estate of McDade decision did not reveal that the state's expropriation action involved property occupied by persons claiming possession derived from the decedent. This court's recognition that the Article 5091 attorney was the proper party defendant for the interests of the unopened succession was therefore correct, and the ruling remains unaffected by our present holding.
Accordingly, we find that Plaintiff's petitory action, which judicially admitted the Hart family's possession of the Property, required that service of process be made upon Christine who at all times maintained that possession during proceedings leading to the 2002 Judgment. Plaintiff's failure to make such service on Christine nullifies the effect of the 2002 Judgment, allowing her to defend the subsequent eviction action by now asserting her ownership claims to the Property as a successor of her parents.[6]

II.
In the reconventional demand of the succession of the Harts, Christine chose not to rest on the family's right of possession which had been established, but instead made a petitory claim for recognition of ownership and the end of the adverse claim of Morris/Greggs. Morris/Greggs' second challenge to the trial court's action concerns the court's recognition of ownership in the successions of the Harts. Morris/Greggs claim that the Hart family was not shown to have acquired the property by acquisitive prescription.
Ownership and other real rights in immovables may be acquired by the prescription of ten years. La. C.C. art. 3472. *669 The requisites for the acquisitive prescription of ten years are: possession of ten years, good faith, just title, and a thing susceptible of acquisition by prescription. La. C.C. art. 3475.
The purpose of good faith acquisitive prescription is to secure the title of a person who purchases immovable property by a deed translative of title, under the reasonable and objective belief that he is acquiring a valid title to the property, and thereafter remains in peaceful possession of the property for more than ten years without any disturbance by the true owner. Phillips v. Parker, 483 So.2d 972 (La. 1986). Good faith is presumed. Neither error of fact nor error of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not the owner of the thing he possesses. La. C.C. art. 3481. The good faith of the possessor should be determined by a consideration of all of the factors of the particular case relevant to the definition of good faith in the Civil Code, and not merely by any reference to the public records doctrine or to any theory of constructive knowledge. Phillips v. Parker, supra. The presumption of good faith is determined in light of objective considerations. See La. C.C. art. 3481 Comment (d); Phillips v. Parker, supra.
A just title is a juridical act, such as a sale, exchange, or donation, sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovables are situated. La. C.C. art. 3483.
At the hearing, Christine testified she was the daughter of Kent and Daisey Hart. Her evidence established that she and her parents before their deaths had lived at 213 Mason Road since 1975. An exhibit book was presented showing various dealings by the Harts with the Property. Entries included various photographs, information about utilities for the home, DeSoto Parish tax assessment and homestead exemption records, home improvement contracts and Daisey Hart's death certificate. The deeds of the two tracts comprising the Property were executed in favor of Mr. and Mrs. Hart and recorded in 1973 and 1974. The deeds represent just title to the Property.
The evidence of the Hart family's corporeal possession of the Property reveals that it began in 1975, and it is undisputed that it continued thereafter through the time of trial, for a period in excess of ten years. The Harts' acquisition and possession of the Property are presumed to have occurred in good faith. There was no evidence presented by Morris/Greggs showing that the Harts lacked a reasonable and objective belief that they had acquired valid title to the Property. Accordingly, the successions of the Harts sufficiently established ownership of the Property by acquisitive prescription of ten years, and their acquisition of ownership in that manner was superior to the more ancient title claims of Morris/Greggs. Any ownership of Morris/Greggs and their ancestors ended as a result of the Harts' acquisitive prescription.[7]

Conclusion
For the above reasons, the judgments of the trial court nullifying the 2002 Judgment and awarding ownership to the Property to the Hart family heirs are affirmed. *670 Costs of the appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] The "Estate of John Morris and his heirs" were recognized as the owners of the property according to the trial court's judgment in this initial petitory action signed August 19, 2002. Thereafter, Chester Greggs, Jr. acquired his co-heirs' undivided interests by sheriff's sale deed in a partition styled "Chester Greggs, Jr. v. Nathaniel Jackson, et al," # 64391, Eleventh Judicial District Court, DeSoto Parish, Louisiana, dated November 10, 2004. In the related proceeding for eviction, also filed in this suit, Greggs was listed as plaintiff.
[2] The petitory action also included a claim by Morris/Greggs regarding other land adjacent to the Property claimed by Joe C. Simpson.
[3] Significantly, while the rationale employed in Estate of Davis elevating Article 734 over Article 5091 was overruled by Act 366 of 1991, the result in the case can still be justified by its unique facts concerning the inadequate intervention in the expropriation action by a portion of the heirs of the unopened estate. Once admitted heirs become identified, the Article 5091 attorney might be relieved by his representation of the estate by requiring those heirs to formally open the succession and to settle or defend the suit through the intervention of a succession representative for the benefit of all heirs.
[4] After the death of Mr. Hart, Daisey Cash Hart and Christine Hart executed a mortgage covering the Property on November 19, 1990, recorded under Registry No. 518904 of the records of DeSoto Parish.
[5] Since Christine was only one of the children of the Harts, we do not rule that she was the only party necessary for the complete adjudication of the Plaintiff's petitory claims. In the absence of the formal opening of the successions by Christine or the identification of all heirs, the appointment of the Article 5091 attorney may still have been necessary for the complete adjudication of the action, along with the inclusion of Christine as a defendant.
[6] In reaching this decision that proper service and citation was required for Christine, we also reject appellant's further argument concerning Christine's disputed knowledge of the proceedings against the successions of the Harts which led to the 2002 Judgment. Without citation, the defendant does not receive notice to appear and respond to the action under penalty of default. La. C.C.P. art. 1202.
[7] For the same reason, Greggs' 2004 sheriff's sale deed involving the partition of the John Morris family interests represents title and a claim of ownership emanating from the Morris interests which were lost to the ownership adversely acquired by the Harts. Greggs' argument of his superiority of title under that sheriff's sale deed is without merit.