GARRETT, J.
| |Sharon Reneau Martin, widow of John Alexander Martin Jr. (“John Jr.”), appeals from a trial court judgment in favor of John Alexander Martin Sr. (“John Sr.”), against the unopened succession of John Jr., for one-third of the value of a house donated to John Jr. and Sharon by John Sr. and his wife, Ruby Aikens Martin. For the following reasons, we vacate the *1012 judgment of the trial court and remand for further proceedings.
FACTS
John Sr. and Ruby Martin lived in West Monroe and were the parents of three adult children, John Jr., Desaree Martin Ross, and Denise Lynn Martin. John Jr. and Denise lived in the West Monroe area. Desaree lived in Indiana. Ruby developed Alzheimer’s disease. In 2008, she executed a general power of attorney to Desaree. John Sr.’s health began to decline and he found it increasingly difficult to care for Ruby. In 2009, Desaree determined it was necessary to take her parents to Indiana to care for them in her home.
In March 2009, John Sr. and Ruby, with Desaree acting as her mother’s agent under the power of attorney, made a donation inter vivos of their house to John Jr. and his wife Sharon.[1] In the donation, the parties estimated the value of the house to be $40,000. Within a few days of the donation, Desaree took John Sr. and Ruby to live in Indiana.
Approximately two years later, in April 2011, John Jr. was diagnosed with cancer. He passed away August 21, 2011. On August 25, 2011, John |2Sr., Desaree, individually and as agent for Ruby, and Denise filed a “Petition to Nullify Donation” against the unopened succession of John Jr. and Sharon to annul the donation.
The plaintiffs alleged that John Sr. had multiple health problems and lacked capacity to make the donation. The petition asserted that Desaree lacked the requisite donative intent to make the donation on behalf of her mother. They also alleged that John Sr. and Ruby did not reserve enough for subsistence and, therefore, under La. C.C. art. 1498, the donation was null. No other allegations were made by the plaintiffs. The petition was served on Sharon. The petitioners expressly noted on the petition that “Service is to be withheld on the unopened succession of John Alexander Martin Jr. until a succession representative has been identified.” The record does not show that a succession representative was identified or that any service was ever requested or made on the succession of John Jr.
The petition was answered by Sharon “individually and as testimony [sic] legatee.” An exception of no right of action was filed against Desaree and Denise by Sharon, “individually and on behalf of the unopened succession of John Jr.,” claiming Desaree and Denise had not alleged an ownership interest in the property. The trial court granted this exception and dismissed Denise and Desaree as plaintiffs.
Sharon, “individually and on behalf of the unopened succession of John Jr.,” also filed an exception of no cause of action alleging that John Sr. and Ruby had approximately $2,800 per month in income from retirement Land Social Security and, therefore, had sufficient income for subsistence. This exception was denied.
Sharon alone then filed á motion for summary judgment, again asserting that John Sr. and Ruby had sufficient funds remaining after the donation and that the donation was not a nullity under La. C.C. art. 1498. The trial court denied this motion.
On December 17, 2012, Ruby passed away. No legal successor was ever substituted for Ruby in this suit.
*1013 Pursuant to a motion filed by Sharon alone, the matter was set for trial, which began on March 28, 2013. Desaree testified that her parents lived in the house at issue for more than 40 years. According to Desaree, when she came to Louisiana to move her parents, John Jr. inquired about what would happen to the house. She claimed that John Jr. badgered John Sr. until he consented to give the house to John Jr. and Sharon. John Jr. wanted the house to be in his name before he moved into it. Desaree stated that John Jr. arranged for donation documents to be drafted and contended that she advised her father not to execute the donation. Desar-ee said her father consented because he “wasn’t in his right mind.” John Sr. was “not doing things right” and “could hardly drive.” Desaree claimed he had been given the wrong medication, but his mind cleared up when he got to Indiana and stopped taking some of the medications prescribed for him in Louisiana. Desaree signed the donation on behalf of her mother, “Because my dad made me. I didn’t know what condition my dad was in really at the time that this took place.” Desaree asserted that she told the notary that she did |4not want to sign the document. She claimed her father did not know he was signing an act of donation.
Desaree claimed that John Sr. had an agreement with John Jr. whereby John Jr. would have the house appraised and a “letter wrote up,” signed, notarized and witnessed that “if anything happened to both of them that the house would still be split three ways.” No such agreement was ever executed by the parties.[2] She acknowledged that John Jr. and Sharon lived in the house for more than two years with no objection from any of the parties.
Wilbur S. Hill Jr., the nephew of John Sr., testified that his uncle told him that John Jr. got the house, but was supposed to have it appraised and pay Desaree and Denise. He also said his uncle told him he gave the deed to his house to John Jr., who was supposed to take care of the girls’ part later. John Sr. also told Wilbur that John Jr. would not move into the house without the deed.
Denise Martin testified that, at the time Desaree took her parents to Indiana, her mother had Alzheimer’s and her father wasn’t thinking clearly. Denise stated that her parents were not in their right minds when the donation was executed. She acknowledged there was nothing wrong with Desaree’s mind, but did not know if anyone “twisted Desaree’s arm” to make her sign the donation. Denise was unaware that Desaree had her mother’s power of attorney and she was not aware of the donation at the |stime it was made. Denise found out about the donation after John Jr. was diagnosed with cancer. She testified that, when she found out about the donation, she told Sharon she wanted her out of the house.
Lori Wilds, the notary who notarized the donation, testified that she would not have notarized the document if anyone had objected to it. She could not remember if she drafted the document, but did not think she did.
John Sr. offered no testimony. At the time of trial, he was not able to travel to Louisiana. He had a broken hip and was in a rehabilitation facility in Indiana recuperating from that injury. The plaintiffs’ attorney sent questions tó John Sr., which a notary read to him and recorded his answers. Sharon’s attorney objected to *1014 the introduction into evidence of that document and the trial court sustained the objection.[3]. During the trial, the court placed a call to John Sr. in order for the parties to question him on the telephone.[4] Sharon objected to the procedure, arguing there was no way to be sure the person on the phone was John Sr. and there was no way to know who was in the room with him. Sharon’s attorney said, “We’re certainly going to object if Ms. Ross [Desar-ee] is in the room with him.” The trial court sustained the objection.
After sustaining the defendants’ objection to questioning John Sr. by telephone, the trial court heard Sharon’s testimony. She was married to John Jr. for 30 years. Sharon claimed that, after Desaree decided to take John Sr. and Ruby to Indiana, John Jr. told her, “Pop and Mom and Desaree Rhave agreed to give us the house. They want us to have the house.” Sharon claimed that Desaree told her she had a lawyer draw up the act of donation. Sharon said that her husband was not capable of having papers drawn up. Sharon stated that, at the time the donation was signed in 2009, no one objected to it, including Desaree. Immediately prior to signing the donation, her husband asked his father if he was sure he wanted him and Sharon to have the house. She testified that John Sr. said yes.
Sharon stated that John Sr. never talked to her about the house, but after John Jr. becarhe ill, Desaree wanted Sharon to give the house back. She claimed that Desaree called her, put John Sr. on the phone, and yelled at hitó to tell Sharon he did not want her to have the house. According to Sharon, she and John Sr. had a very cordial conversation and he did not tell her he did not want her to have the house. Sharon testified that there was no indication that John Sr. and Ruby did not have enough money to live on.
Justin Brown, son-in-law of John Jr. and Sharon, testified that he and his wife, Roxie, frequently went to the home of John Sr. and Ruby prior to their move to Indiana. While Ruby had health problems, he did not perceive that John Sr. was ever confused.
Later, pursuant to a motion for new trial by Sharon, the trial court also heard the testimony of Roxie Brown, who had been confined to bed due to pregnancy during the trial and was not able to appear to testify. She is the daughter of John Jr. and Sharon, and the granddaughter of John Sr. and Ruby. She frequently visited in her grandparents’ home. She testified that Mr. Hill did not come to her grandparents’ house very often and, visited only |7once in the three weeks before they moved to Indiana. Roxie claimed Desaree told her it had always been known that John Sr. wanted John Jr. to have the house. Soon after her grandparents moved to Indiana, Desaree called Roxie and told her it would be fair if John Jr. gave Denise her part whenever the time came. Roxie stated there was no mention of any promise to pay the aunts a portion of the value of the house until her father became ill. Her aunts did not like her mother and told Roxie they would do whatever it took to get Sharon out of the house.
After hearing the testimony, the trial court stated on the record that there was *1015 no showing of a lack of capacity or dona-tive intent or that John Sr. and Ruby left themselves without subsistence in making the donation.[5] Therefore, the donation was valid. Although the plaintiffs had only sued to have the donation declared null, the trial court went on to conclude that the plaintiffs proved John Jr. made a promise to pay his sisters for their portion of the house. The court found that Sharon did not make any promise and no promise was made to Ruby. All claims against Sharon were dismissed.[6]
The court asked for argument on the effect of its finding regarding a promise from John Jr. to John Sr. John Sr.’s attorney asserted that this constituted detrimental reliance. Sharon’s attorney objected to the court’s conclusion, arguing that the only evidence of a promise was the self-serving testimony of Desaree. The court was unsure about the measure of damages. |sThe court pronounced judgment in favor of John Sr. against the unopened succession of John Jr., and took the issue of damages under advisement.[7]
On May 15, 2013, the trial court filed into the record its reasons for judgment finding that there was no showing of a lack of donative intent and no coercion in making the donation. The court stated that John Sr. failed to show that the donation left John Sr. and Ruby impecunious. The court then stated:
More intriguing though, was the argument of the Plaintiff that Mr. Martin was entitled to rescind the donation and/or obtain damages because of the doctrine of detrimental reliance. The evidence adduced at trial showed that Mr. Martin, Sr., had expressed a desire to treat his three children equally in the matter of inheritance. However he was entreated by his son, John Martin Jr., to donate the residence to him once his parents left the State to live with one of the other children. This Court concluded, based on the testimony of both of John Jr.’s siblings | sand an Uncle of the children that Mr. Martin Jr., had promised his father that, after receiving the donation of the former family home, he would appraise the property and pay his two siblings a sum of money each equal to one third of the value of the former *1016 family home.[8] No time limit was apparently discussed. With these reservations calmed, Mr. and Mrs. Martin proceeded to effect a formal donation of the property to John Martin, Jr. The Court found, after the conclusion of the evidence, that neither of the donors suffered from any mental incapacity that precluded them from effectively donating. Neither was their [sic] anything about thé circumstances surrounding the signing of the authentic acts which was coercive[.]
It is clear to this Court that the promise made by John Jr. was made and this promise reassured John Sr. as to how his other two children would be treated. Since John Sr. made the discussed donation, the Court also finds that John Sr. “detrimentally relied” on the promise made by John Jr. within the meaning of La. C.C. art. 1967. It is also clear that John Jr. never made good on that promise. It’s the Court’s opinion that he just never got around to doing what he promised, before he (John Jr.) died. [Original footnotes omitted.]
In its reasons for judgment, the trial court concluded that the unopened succession of John Jr. should pay John Sr. damages equal to 2/3 of the appraised value of the house as of the date suit was filed. The claims against Sharon were dismissed.
On May 28, 2013, prior to the signing of the actual judgment in this matter, Sharon alone filed a motion for new trial to set aside the reasons for judgment. She pointed out that the plaintiffs only pled and argued that the donation was a nullity. She asserted that the plaintiffs never pled entitlement to recovery on the basis of detrimental reliance on a promise [ inmade by John Jr. to John Sr. Sharon also argued that the damage award of 2/3 of the value of the property was unclear.
At the hearing on the motion for new trial, Sharon argued that the trial court came up with the idea that detrimental reliance applied to this case during trial.[9] The parties did not allege detri- *1017 mental reliance in this case or plead any facts in their petition to support a claim for detrimental reliance. Based upon the testimony of Desaree and Wilbur Hill, the trial court came up with the idea that John Sr. had relied to his detriment on a promise by John Jr. and should be entitled to damages. Sharon pointed out that John Sr. did not testify and argued that the trial court concluded, without any direct evidence, that a promise was made.
The trial court denied the motion for new trial, but an extensive discussion was held on how damages should be calculated. The trial court then reversed itself and granted the motion for new trial, conceding that it erred in concluding that John Jr.’s unopened succession should pay John Sr. 2/3 of the value of the house. The trial court reasoned that John Sr. only |nhad a 1/2 interest in the house, so the judgment should be for 2/3 of 1/2 of the value of the house, which equals 1/3 of the total value as of the date of the donation, not the date of filing suit.
Because no judgment had been signed previously, on September 24, 2013, the trial court filed supplemental reasons for judgment correcting the formula for calculating the amount to be paid to John Sr. by the unopened succession of John Jr. Judgment was signed March 28, 2014, granting judgment in favor of John Sr. against the unopened succession of John Jr. for 1/3 of the appraised value of the house as of the date of the donation, March 23, 2009, plus costs.[10] All claims against Sharon were dismissed. Sharon alone appealed, arguing that the trial court erred in failing to uphold unconditionally the donation by John Martin Sr. and Ruby Martin to John Martin Jr. and Sharon Martin. While we note many problems with the manner in which the trial court arrived at its decision, we do not reach consideration of any of those issues or the arguments raised on appeal by Sharon. Ultimately, the trial court rendered judgment in favor of John Sr. and only against the unopened succession of John Jr. Therein lies the problem.
| ^FAILURE OF CITATION AND SERVICE OF PROCESS
The original plaintiffs in this matter filed suit against the unopened succession of John Jr. and Sharon. As stated above, the petition was served on Sharon alone and a notation on the petition stated “Service is to be withheld on the unopened succession of John Alexander Martin Jr. until a succession representative has been identified.” Under La. C.C.P. art. 2826, a “succession representative includes an administrator, provisional administrator, administrator of a vacant succession, executor, and dative testamentary executor.” La. C.C.P. arts. 3081-3159 provide for the appointment of succession representatives. La. C.C.P.-art. 3159 states:
*1018 After the person appointed or confirmed as succession representative has qualified by furnishing the security required of him by law, and by taking his oath of office, the clerk shall issue to him letters of administration or letters testamentary, as the case may be.
These letters, issued in the name and under the seal of the court, evidence the confirmation or appointment of the succession representative, his qualification, and his compliance with all requirements of law relating thereto.
La. C.C.P. art. 734 states:
Except as otherwise provided by law, including but not limited to Articles 2641 and 2674, the succession representative appointed by a court of this state is the proper defendant in an action to enforce an obligation of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed.
Our jurisprudence previously provided that the law did not allow one to bring an action against an unopened succession for which no representative has been appointed. Minden Bank & Trust Co. v. Childs, 27,135 (La.App.2d Cir.6/21/95), 658 So.2d 216. See also Holland v. Unopened Succession of Holland, 562 So.2d 1022 (La.App. 3d Cir.1990), writ denied, 566 So.2d 399 (La.1990). In 1991 and 1992, the law was amended to provide a specific procedure for filing suit against deceased persons for whom no succession representative has been appointed. By Acts 1991, No. 366, La. C.C.P. art. 5091 was amended to add (A)(2)(a) of that article, which provides:
A. The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(2) The action of proceeding is in rem and:
(a) The defendant is dead, no succession representative has been appointed, and his heirs and legatees have not been sent into possession judicially.
Notes to the Act state that “Code of Civil Procedure Article 734 and R.S. 48:441 through- 460, inclusive, are hereby superseded to the extent that those provisions are in conflict with the provisions of this Act and all other laws or parts of laws in conflict herewith are hereby repealed.”
In Acts 1992,-No. 584, La. C.C.P. art. 5091(A)(1)(c) was added, which states:
A. The court shall appoint an attorney at law to represent the defendant, on the petition or ex parte written motion of the plaintiff, when:
(1) It has jurisdiction over the person or property of the defendant, or over the status involved, and the defendant is: (c) Deceased and no succession representative has been appointed.
| ]4La. C.C.P. art. 5091(B) provides in pertinent part:
All proceedings against such a defendant shall be conducted contradictorily against the attorney at law appointed by the court to represent him.
In this case, there is no showing that Sharon was ever appointed as the succession representative. Even though her exceptions of no right and no cause of action recited that they also were being filed on behalf of the unopened succession, there is no proof in this record that she had been recognized by any court of this state as the succession representative. In later pleadings, she filed individually with no mention of the unopened succession. At the hearings in this matter, at one point, Sharon’s attorney stated that he had opened the *1019 succession, but later clarified for the trial court that he made the comment in error. Also, at another point, the court asked if the unopened succession was represented and Sharon’s attorney stated that Sharon represented the succession. In spite of these statements, there is no showing that Sharon had been properly appointed as the succession representative. Because there is no showing that Sharon had authority to represent the unopened succession, any appearance she made cannot be construed as a submission by the unopened succession to the jurisdiction of the court under La. C.C.P. art. 6, which states in pertinent part:
A.Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires:
(1) The service of process on the defendant, or on his agent for the service of process, or the express waiver of citation and service under Article 1201 [.]
11S(3) The submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception.
Further, there was no citation or service on Sharon as the succession representative of the unopened succession of John Jr.
Also, no attorney was appointed to represent the unopened succession under La. C.C.P. art. 5091 and no citation or service was made on any purported attorney representative of the unopened succession. La. C.C.P. art. 1201 provides:
A. Citation and service thereof are essential in all civil actions except summary and executory proceedings, divorce actions under Civil Code Article 102, and proceedings under the Children’s Code. Without them all proceedings are absolutely null.
B. The defendant may expressly waive citation and service thereof by any written waiver made part of the record.
C. Service of the citation shall be requested on all named defendants within ninety days of commencement of the action. When a supplemental or amended petition is filed naming any additional defendant, service of citation shall be requested within ninety days of its filing. The defendant may expressly waive the requirements of this Paragraph by any written waiver. The requirement provided by this Paragraph shall be expressly waived by a defendant unless the defendant files, in accordance with the provisions of Article 928, a declinato-ry exception of insufficiency of service of process specifically alleging the failure to timely request service of citation.
D. If not waived, a request for service of citation upon the defendant shall be considered timely if requested on the defendant within the time period provided by this Article, notwithstanding insufficient or erroneous service. [Emphasis supplied.]
La. C.C.P. art. 2002(A)(2) provides:
A. A final judgment shall be annulled if it is rendered:
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
| ^Proper citation is the cornerstone of all actions. Wills v. National Auto. Ins., 41,034 (La.App.2d Cir.4/12/06), 926 So.2d 771. Without citation and service, all proceedings are an absolute nullity. Even a defendant’s actual knowledge of a legal action cannot supply the want of citation: proper citation is the foundation of all actions. Strong’s Plumbing Inc. v. All Seasons Roofing & Sheet Metal, Inc., *1020 32,783 (La.App.2d Cir.3/1/00), 754 So.2d 336. See also Succession of Barron, 345 So.2d 995 (La.App. 2d Cir.1977); Wills v. National Auto. Ins., supra. When the appellate court notices an absolute nullity, the court is empowered to vacate or correct the judgment on its own motion. Pope v. Roberts, 2013-1407 (La.App. 1st Cir.4/16/14), 144 So.3d 1059.
In this case, there is no showing that Sharon or an attorney representative was ever appointed by the court to represent the unopened succession of John Jr. There was no attempt to serve a succession representative or attorney appointed to represent the unopened succession and there was no one with authority to make the express written waiver of citation and service required by La. C.C.P. art. 1201. Further, there was no one with authority to submit the unopened succession to the jurisdiction of the court under La. C.C.P. art. 6. Because there was no citation and service, and no valid waiver thereof, all proceedings against the unopened succession are null. As stated above, when an appellate court notices an absolute nullity, it is empowered to vacate or correct the judgment on its own motion. See and compare Norton v. Graham, 35,520 (La.App.2d Cir.1/23/02), 806 So.2d 933, writ denied, 2002-0885 (La.6/7/02), 818 So.2d 774; Heirs of Morris v. Simpson, 43,693 (La.App.2d Cir.10/29/08), 997 So.2d 659.
Accordingly, we find that the proceedings and judgment against the unopened succession of John Jr. are a nullity and must be vacated. The matter is remanded to the trial court for further proceedings. On remand, we remind the plaintiff, John Alexander Martin Sr., that the trial court has already ruled that the donation was valid, that Desaree and Denise are not parties to the action, that nothing is owed to Ruby Martin, and that all claims against Sharon are dismissed. These portions of the trial court judgment were not appealed and are now final.
CONCLUSION
For the reasons stated above, we find that the judgment pronounced by the trial court in favor of John Alexander Martin Sr. and against the unopened succession of John Alexander Martin Jr., for one-third of the value of the house donated to John Alexander Martin Jr. and Sharon Reneau Martin by John Alexander Martin Sr. and Ruby Aikens Martin, is a nullity for failure of citation and service. The judgment is vacated and the matter is remanded to the trial court for further proceedings. All costs in this court are assessed to the plaintiff, John Alexander Martin Sr.
VACATED AND REMANDED.

. We note that the plaintiffs alleged that the donation at issue here was executed on March 23, 2009. The record reflects that a donation from John Martin Sr. et al. to John Martin Jr. et al. was recorded in the Ouachita Parish conveyance records on March 23, 2009. However, the copy of the donation contained in this record is not dated.

. It seems illogical to contend that John Sr. did not know what he was doing when he executed the donation, but then later asserted that he made the donation based upon a promise from John Jr.

. La. C.C.P. art. 1448 provides a procedure for taking the testimony of any person, including a party, by deposition on written questions.

. La. C.C.P. art. 1436.1 provides ■ that "If agreed upon by every party to a suit or if ordered by the court, a deposition may be taken by telephone or other remote electronic means.”

. Numerous financial documents were introduced into evidence by Sharon which indicated the elder Martins had sufficient means for their support.

. John Sr. has not appealed these issues and the trial court's determination that the donation was valid constitutes a final judgment.

. During the course of the discussion between the trial court and the attorneys, the trial court exhibited confusion regarding the fact that it had granted an exception of no right of action excluding Desaree and Denise as plaintiffs. The following exchange occurred between the trial court and John Sr.’s attorney:
Trial court: And John, Sr. apparently is the only one who recovers unless you could come up with some theory why Desiree [sic] and Denise can recover against anybody.
John Sr.'s attorney: I mean, Your Honor, we can't offer any theory on that. They’re not — they're not still parties to this action, you know. They were knocked out on his motion.
Trial court: Oh, they're not parties?
John Sr.'s attorney: No, Your Honor. They were knocked out on his motion for exception.
Later, this exchange occurred:
Trial court: All right. Now, listen, I tossed this around a little bit. Anybody ever heard of that — is that still a Louisiana law? Stipulation pour autrui? Do we still have that? Anybody familiar with that? That third party beneficiary stuff? That’s the only way — well, you said they’re not parties anyway; that is Desiree [sic] and Denise.
John Sr.’s attorney: Yeah, I mean Desiree — Desiree and Denise aren’t parties. Trial court: Okay. Never mind.

. The transcript demonstrates that the trial court was incorrect in these factual findings. Both siblings did not testify as to an alleged promise between John Jr. and John Sr. Only Desaree testified about a promise. Denise did not testify regarding any promise and stated that she -was not aware of the donation until several years after it was made. Also, no "Uncle of the children” testified regarding a promise. Wilbur Hill Jr., who identified himself as the nephew of John Sr., testified regarding an alleged promise.

. At trial, the court came up with the notion that detrimental reliance was an issue before it for decision, referring to the cause of action "I ginned up in my head just a moment ago.” When Sharon's attorney objected and indicated the decision would be appealed, the trial court stated, "I’m kind of looking forward to the Court of Appeal kind of chewing this over real quickly.”
We are aware that La. C.C.P. art. 862 provides that a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief. We also recognize that La. C.C.P. art. 1154 provides in part that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading.” Pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and, hence, would be excluded if objected to timely. Roberson v. Provident House, 576 So.2d 992 (La.1991). See also Greengrove Missionary Baptist Church v. Cox, 42,418 (La.App.2d Cir.9/19/07), 966 So.2d 707, writ denied, 2007-2064 (La.12/14/07), 970 So.2d 537. In this matter, it does not appear that there was any acquiescence in the court’s action. Sharon’s attorney objected to the court’s action in expanding the issues before it at the time it occurred, in a motion for new trial, and on appeal.

. The judgment did not specify a definite monetary amount to be awarded to John Sr. At the trial, Desaree testified the property was worth at least $100,000, and disputed the $40,000 estimated value shown in the donation. Judgments are required to be precise, definite, and certain. The specific nature and amount of damages should be determinable from a judgment without reference to an extrinsic source. Security Nat. Partners, Ltd. P’ship v. Baxley, 37,747 (La.App.2d Cir.10/29/03), 859 So.2d 890. If a judgment purports to be final and is given upon a money demand, the amount of the recovery must be stated in it with certainty and precision. If the amount remains to be determined by a future contingency, or ascertained by references, or diminished by the allowance of an unliquidated credit, or is otherwise indefinite and uncertain, it is no proper judgment. In re Succession of Jenkins, 41,202 (La.App.2d Cir.7/26/06), 936 So.2d 268. See also In re Succession of Wagner, 2008-0212 (La.App. 1st Cir.8/8/08), 993 So.2d 709.